Alfred Stephen VILLANI, Appellant,

v.

The STATE of Texas, Appellee.

No. 14–02–00075–CR.

Court of Appeals of Texas,
Houston (14th Dist.).

Aug. 19, 2003.

Bob Wicoff, Houston, for appellant.

Eric Kugler, Houston, for appellee.

Panel consists of Justices HUDSON, FROST and GUZMAN.

## OPINION

KEM THOMPSON FROST, Justice.

Appellant Alfred Stephen Villani appeals his felony theft conviction, arguing that: (1) the evidence is legally and factually insufficient to prove the complainant's ownership of the stolen goods and to prove the value of the goods exceeded $20,000; (2) the evidence is factually insufficient to prove appellant unlawfully appropriated the goods; and (3) the trial court erroneously charged the jury on venue. We affirm.

### I. FACTUAL AND PROCEDURAL BACKGROUND

Cliff Anderson, a fraud investigator employed by Intel Corporation, became suspicious of appellant when he discovered appellant selling Intel Confidential computer processors on an internet auction site. Appellant's activity drew suspicion because the computer parts were Intel's intellectual property and were not intended for sale. Although the company loaned its Intel Confidential products to its "high-end" clients, such as Compaq Computer Corporation, for use in engineering new products, these items remained the property of Intel and were to be returned to Intel or destroyed after use.

As part of his investigation, Anderson contacted Lisa McPherson, a security agent at Compaq, who informed Anderson that appellant had worked at a Compaq facility in the recent past. Anderson then contacted appellant, and without disclosing his role at Intel, agreed to purchase a

processor from him. Anderson told appellant to deliver the processor to McPherson. Acting in an undercover role, McPherson purchased an Intel Confidential Xeon 667 processor from appellant in a mall parking lot in Harris County. McPherson was wearing a wire, and after she confirmed that appellant sold her an Intel Confidential processor, Houston police arrested appellant at the scene. Appellant had five more Intel Confidential Xeon 667 processors and four Intel Confidential Pentium III 750 processors in his vehicle, which was parked in the mall parking lot.

After appellant's arrest, police searched his apartment in Fort Bend County and discovered 29 Intel Confidential Xeon processors and 29 Intel Confidential Pentium III 750 processors.[1] Appellant was charged with the theft of 68 computer processors with a total value in excess of $20,000. The theft was alleged to have occurred in Harris County.

A jury found appellant guilty as charged. The trial court assessed punishment at eight years' community supervision and imposed a fine of $1,000.

## II. ISSUES PRESENTED

Appellant presents the following issues for review:

(1) Is the evidence factually sufficient to prove appellant unlawfully appropriated the computer processors?

(2) Is the evidence legally and factually sufficient to prove Anderson (Intel's fraud investigator) owned the computer processors found in appellant's possession?

(3) Is the evidence legally and factually sufficient to prove the value of the computer processors exceeded $20,000?

(4) Did the trial court reversibly err by denying appellant's requested jury instructions on venue?

## III. LEGAL AND FACTUAL SUFFICIENCY

 In evaluating a legal-sufficiency challenge, we view the evidence in the light most favorable to the verdict. *Wesbrook v. State*, 29 S.W.3d 103, 111 (Tex.Crim.App. 2000). The verdict may not be overturned unless it is irrational or unsupported by proof beyond a reasonable doubt. *Matson v. State*, 819 S.W.2d 839, 846 (Tex.Crim. App.1991). The jury, as the trier of fact, "is the sole judge of the credibility of the witnesses and of the strength of the evidence." *Fuentes v. State*, 991 S.W.2d 267, 271 (Tex.Crim.App.1999). If any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt, we must affirm. *McDuff v. State*, 939 S.W.2d 607, 614 (Tex.Crim.App.1997). The question is not whether a rational jury could have entertained a reasonable doubt of guilt, but whether it necessarily would have done so. *Swearingen v. State*, 101 S.W.3d 89, 96 (Tex.Crim.App.2003).

 When evaluating a challenge to the factual sufficiency of the evidence, we view all the evidence without the prism of "in the light most favorable to the prosecution" and set aside the verdict only if it is "so contrary to the overwhelming weight of the evidence as to be clearly wrong and unjust." *Johnson v. State*, 23 S.W.3d 1, 6–7 (Tex.Crim.App.2000). This concept embraces both "formulations utilized in civil jurisprudence, i.e., that evidence can be factually insufficient if (1) it is so weak as to be clearly wrong and manifestly unjust or (2) the adverse finding is against the great weight and preponderance of the available evidence." *Id.* at 11. Under this formulation, we essentially compare the

---

**1.** All references to processors in this opinion are to Intel Confidential processors.

evidence which tends to prove the existence of a fact with the evidence that tends to disprove that fact. *Jones v. State*, 944 S.W.2d 642, 647 (Tex.Crim.App.1996). We must employ appropriate deference so that we do not substitute our judgment for that of the fact finder. *Id.* at 648. Our evaluation should not intrude upon the fact finder's role as the sole judge of the weight and credibility given to any witness's testimony. *Cain v. State*, 958 S.W.2d 404, 407 (Tex.Crim.App.1997). In conducting a factual-sufficiency review, we must consider and address the appellant's main argument for a finding of insufficiency. *Sims v. State*, 99 S.W.3d 600, 603 (Tex.Crim.App. 2003). This practice benefits the parties, maintains the integrity of the justice system, and improves appellate practice. *Id.* We find the evidence factually insufficient only when necessary to prevent manifest injustice. *Cain*, 958 S.W.2d at 407.

 When reviewing the legal and factual sufficiency of the evidence, the standards of review are the same for circumstantial and direct evidence. *Kutzner v. State*, 994 S.W.2d 180, 184 (Tex.Crim.App. 1999). Circumstantial evidence alone may be sufficient to support the jury's verdict. *Id.*

## A. Is the evidence factually sufficient to prove appellant unlawfully appropriated the computer processors?

In his third issue, appellant argues the evidence is factually insufficient to prove that he unlawfully appropriated the computer processors from Compaq's Houston campus in Harris County. In support of this issue appellant argues that: (1) there

is no evidence in the record that the processors appellant possessed were ever located at the Compaq campus; and (2) assuming Compaq received the processors, there are equally reasonable hypotheses that explain the removal of the processors from the Compaq campus.

### 1. Is the evidence factually sufficient to prove the processors were located at Compaq?

 Appellant argues the evidence is factually insufficient to show the processors were ever located at the Compaq campus because the evidence does not show the date the processors were shipped to or arrived there, and because Compaq never reported the processors were stolen from its facility. Appellant emphasizes Anderson's testimony that the processors were first shipped to Matt Smith, an Intel employee at the Houston field office, and the lack of evidence in the record as to whether Smith delivered the processors to Compaq.

Appellant is correct that the record neither includes dates on which the processors were shipped to or received by Compaq nor suggests the processors "turned up missing" at Compaq. However, the State was not required to prove these facts to show appellant unlawfully appropriated the processors from Compaq.

Theft is the unlawful appropriation of property with the intent to deprive the owner of the property. TEX. PEN.CODE § 31.03(a). Appropriation of property is unlawful if it is without the owner's effective consent or if an actor appropriates stolen property knowing it was stolen by another. TEX. PEN.CODE § 31.03(b)(1),(2).[2]

**2.** In his third issue, appellant challenges the factual sufficiency of the evidence to prove (1) appellant knowingly received stolen processors in Fort Bend County; and (2) that he stole the processors from the Compaq campus in Harris County. Because the jury, by its

verdict, found appellant guilty of theft of the processors based on the latter rather than the former, we do not reach the issue challenging the sufficiency of the evidence to show that appellant knowingly received stolen property in Fort Bend County.

Appellant was found in possession of 35 Intel Confidential Pentium III Xeon 667 processors and 33 Intel Confidential Pentium III 750 processors. Anderson testified that, based on his extensive training and experience, he believed appellant stole these processors. Anderson explained that part of the basis for this belief was the fact that, for both types of processors in appellant's possession, all of the processors were from a single production run and most of the products from the run were shipped to Compaq. Although Anderson conceded it is sometimes possible to legally obtain Intel Confidential products in the marketplace, he testified it is highly unlikely that someone would legally obtain so many confidential processors from the same production run.

Anderson was able to trace the processors found in appellant's possession using the serial numbers on the products. Anderson testified the Intel Confidential 750 processors were from a production run in which 498 parts were made, of which 300 were shipped to Compaq. Anderson determined the Xeon 667 processors were Intel Confidential processors from a single manufacturing run in which 177 processors were manufactured at a factory in Malaysia. Anderson further testified, without objection, that 170 of the 177 processors from that run were shipped from Malaysia to Compaq's campus in Houston and that the other seven were shipped to another company in Asia. When asked about the shipping route of the 170 Xeon processors from Malaysia to Compaq, Anderson testified the processors were first shipped to Matt Smith, an Intel employee at a Houston field office. In the same response, Anderson attempted to specify to whom Smith delivered the processors, but the trial court sustained a hearsay objection defense counsel made in the middle of Anderson's sentence, so Anderson did not testify as to the route of these processors after Smith received them. Appellant argues that, because the record does not include evidence as to what Smith did with the processors, the evidence is factually insufficient to prove the processors were ever received at Compaq's campus. Although the State did not introduce documentation that directly proved the processors reached the Compaq campus, Officer Frank Quinn of the Houston Police Department testified he was sure of the existence of documentation proving Compaq received the processors.

 The jury is entitled to draw reasonable inferences from circumstantial evidence to ultimate facts. *See $165,524.78 v. State*, 47 S.W.3d 632, 635 (Tex.App.-Houston [14th Dist.] 2001, pet. dism'd). By its verdict, the jury apparently concluded that the processors appellant possessed were at Compaq's Houston campus and that appellant stole them from Compaq. Because the jury reasonably could have inferred from the testimony of both Anderson and Quinn that the processors shipped to Compaq reached the Compaq campus, we cannot say the jury's finding to that effect is clearly wrong and unjust. Accordingly, we overrule appellant's challenge to the factual sufficiency of the evidence to prove the processors reached Compaq.

**2. Do alternative reasonable hypotheses render the evidence factually insufficient to prove appellant unlawfully appropriated the processors from Compaq?**

 Appellant further argues that even if the computers reached Compaq's Houston campus, the evidence is factually insufficient to prove he unlawfully appropriated them from that location because there are equally probable explanations for the removal of the processors from Compaq's facility. Appellant provides two alternative hypotheses to explain the remov-

al of the processors: (1) appellant may have obtained the processors from three former Compaq employees who were arrested and charged with stealing processors from Compaq, rather than stealing the processors from Compaq himself; and (2) appellant may have purchased the processors from a legitimate surplus sale.[3]

The existence of alternative reasonable hypotheses may be relevant to, though not necessarily determinative of, a factual sufficiency review. *See Wilson v. State*, 7 S.W.3d 136, 141 (Tex.Crim.App. 1999). Although we may consider alternative hypotheses raised by the evidence, we may not set aside the jury's verdict simply because we think another result is more reasonable. *See House v. State*, 105 S.W.3d 182, 183 (Tex.App.-Houston [14th Dist.] 2003, pet. ref'd). Appellant's hypotheses are unconvincing and do not account for critical portions of the evidence which support the jury's finding that appellant unlawfully appropriated the processors when he worked at the Compaq campus.

Anderson concluded the processors were stolen for four reasons: (1) appellant possessed a large quantity of processors; (2) the processors in question were Intel Confidential products, which remained the property of Intel and, as such, were only rarely available for purchase; (3) appellant was selling the products at prices substantially lower than their value which suggested appellant obtained the processors without charge; and (4) the processors were Intel Confidential products and from production runs that were shipped predomi-nantly to Compaq. Testimony from appellant's supervisor at Compaq and a security agent for Compaq showed appellant had the opportunity to unlawfully appropriate the processors from Compaq's Houston facility and that appellant knew Intel Confidential products were property of Intel.

McPherson was an employee of Pinkerton Security. Her sole assignment was to investigate security issues at Compaq. At the time of trial, she had been on that assignment for three and a half years. She testified that appellant worked at the Compaq facility as a design coordinator from February of 2000 to June of 2000.[4] Appellant's job was to transport processors and other computer parts to different design teams that needed them at various points in the design process. According to McPherson, not all divisions within Compaq have access to Intel Confidential processors, but appellant's work gave him access to these processors.

Diane Garrett, appellant's supervisor at Compaq, testified that appellant used a cart to transport computer parts around the Compaq campus. Appellant was stationed in an area that allowed him to pass through a parking garage before and after accessing other buildings on the Compaq campus. Garrett also testified that appellant had special security clearance, called a "red badge," that allowed him to move materials to and from different areas of Compaq, and to handle prototype materials, such as the processors. Compaq security tracked non-prototype materials when they were moved to different locations on

**3.** In addition to these hypotheses, appellant argues it is unreasonable to conclude appellant stole the processors when he worked at the Compaq campus because appellant did not begin to sell them until two months after his term at Compaq ended. We find this argument unpersuasive because, even assuming appellant did not begin selling the pro-cessors until two months after the conclusion of his term at Compaq, this would not make the jury's verdict clearly wrong and unjust.

**4.** Appellant was not employed by Compaq. He was employed by a contractor that provided temporary labor for Compaq.

the Compaq campus; a bar code on the item was scanned when the item was taken out of one location and then scanned again when the item was taken into the next location. Because Intel Confidential processors are prototype materials, they did not bear bar codes and could not be scanned. According to Garrett's testimony, whether prototype materials were manually tracked when moved between locations at Compaq tended to depend on the individual security guard at the particular location. Garrett further testified that, as a contract worker, appellant knew Intel Confidential products were not intended for the marketplace because they were Intel's intellectual property and were only loaned to Compaq for testing purposes.

Appellant's hypotheses, that he might have obtained the processors at a surplus sale or from three former Compaq employees, are not supported by the record. The three former employees were arrested and indicted in federal court for allegedly stealing processors from Compaq between 1998 and November of 2000, and selling them on the internet. The processors appellant possessed were manufactured in late 1999. This production date for the processors in question greatly narrows the time frame in which appellant could have received the processors from the three former employees. More significantly, when Officer Quinn asked appellant how he obtained the processors, appellant said he obtained them from a stranger on the street whose name he did not know. This proffered explanation from appellant undermines the likelihood that he purchased the processors from the three former employees, and contradicts the hypothesis that appellant obtained the processors at a surplus sale.

Although appellant is correct that Anderson testified generally that Intel

Confidential items were sometimes found at surplus sales or for sale on the internet, the evidence in the record shows that Intel Confidential products loaned to Compaq were never legally offered for sale. Anderson testified that Intel had a confidentiality agreement with each company that received Intel Confidential products and that this form of agreement required a borrowing company, such as Compaq, to either destroy the Intel Confidential products or return them to Intel after use. The evidence showed Compaq agreed to destroy Intel Confidential products after Compaq finished using them. Garrett testified as to Compaq's specific, secure procedures to destroy Intel Confidential products. She also testified that Compaq did not auction or otherwise release Intel Confidential products into the stream of commerce.

Viewing all of the evidence under the factual-sufficiency standard of review and considering alternative hypotheses, we cannot say the jury's finding that appellant stole the processors from Compaq is manifestly unjust. Accordingly, we overrule the remainder of appellant's third issue.

**B. Is the evidence legally and factually sufficient to prove Anderson (Intel's fraud investigator) owned the processors?**

In his first and second issues, appellant argues the evidence is legally and factually insufficient to prove Anderson, Intel's fraud investigator, owned the processors as is alleged in the indictment. When a corporation owns property that allegedly has been stolen, the preferable pleading practice is to allege ownership in an individual acting for the corporation rather than alleging ownership in the corporation. *Sowders v. State*, 693 S.W.2d 448, 451 (Tex.Crim.App. 1985); *Harris v. State*, 846 S.W.2d 960,

962 (Tex.App.-Houston [1st Dist.] 1993, pet. ref'd). Under the Texas Penal Code, Anderson was the owner of the processors if he had a greater right to possession of the processors than appellant. *See* TEX. PEN.CODE § 1.07(a)(35)(A). "Possession" means actual care, custody, control, or management. TEX. PEN.CODE § 1.07(a)(39). Therefore, we must determine whether the evidence is legally and factually sufficient to support the jury's finding that Anderson had a greater right to the actual care, custody, control, or management of the processors than appellant. *See Alexander v. State,* 753 S.W.2d 390, 392 (Tex.Crim. App.1988). Proof of ownership may be made by circumstantial evidence. *Jordan v. State,* 707 S.W.2d 641, 644 (Tex.Crim. App.1986).

Appellant maintains there is no evidence in the record that Anderson ever had a greater right to possess the processors than appellant. Appellant emphasizes that Anderson never testified that he owned the processors and that the only evidence at trial concerning the right to possess was appellant's statement, admitted through Officer Quinn's testimony, that appellant bought the processors from a stranger on the street.

Contrary to appellant's arguments, the record contains sufficient evidence from which a rational jury could have found beyond a reasonable doubt that Anderson had a greater right to possess the processors than appellant. At the time of trial, Anderson had worked for Intel as a fraud investigator for about eighteen months, managing Intel's fraud investigations. Anderson was qualified for this position because he had spent the preceding twenty years in law enforcement and had extensive experience handling property thefts. According to Anderson, as a fraud investigator for Intel, he monitored internet auctions for sales of Intel Confidential products. Because Intel Confidential products remained the property of Intel and were governed by confidentiality agreements prohibiting their sale, Anderson, acting on behalf of Intel and in furtherance of his duties to the company, retrieved Intel Confidential products from the marketplace. Anderson testified that he worked with law enforcement agencies and Intel's clients to accomplish this task.

Appellant, on the other hand, was found in possession of 68 Intel Confidential computer processors that he claimed to have received from a stranger on the street whose name he did not know. The serial numbers showed the processors were most likely shipped to Compaq, and Compaq's employees explained that, given the confidentiality agreements, Compaq would not have sold them. Appellant possessed the processors outside of the Compaq campus and outside of the scope of the work he formerly performed there, though he knew from his training at Compaq that Intel Confidential processors were Intel's property.

A rational jury could have concluded from these facts that Anderson had a greater right to possess the processors than appellant. *See Johnson v. State,* 606 S.W.2d 894, 895–96 (Tex.Crim.App.1980) (holding store security guard who was employed to protect property and keep it from being stolen had greater right to possess and could be alleged as owner in the indictment); *Rabb v. State,* 681 S.W.2d 152, 154 (Tex.App.-Houston [14th Dist.] 1984, pet. ref'd) ("A person acting on behalf of a corporation, with managerial authority and responsibility over its goods, is the effective owner . . . ."). Accordingly, after applying the factual-sufficiency standard of review, we conclude the evidence is factually sufficient to support the jury's finding that Anderson had a greater right to possess the processors than appellant.

Appellant's first and second issues are overruled.

## C. Is the evidence legally and factually sufficient to prove the value of the property exceeded $20,000, as alleged in the indictment?

▇▇▇ In his fourth and fifth issues, appellant challenges the legal and factual sufficiency of the evidence to prove the value of the processors was greater than $20,000. Although the indictment charged appellant with the theft of 68 "computer processors," the jury charge required the jury to find appellant unlawfully appropriated 68 "Pentium Processors." Seizing on this discrepancy in wording, appellant argues the evidence is legally and factually insufficient to sustain appellant's conviction for theft of property exceeding $20,000 in value because, on appellant's reading of Anderson's testimony, the value of the Pentium processors was only $7,500, while the value of the Xeon processors was approximately $16,000.[5]

▇▇▇▇ Appellant's argument fails because the sufficiency of the evidence is measured against the hypothetically correct jury charge, rather than the actual charge. *Malik v. State*, 953 S.W.2d 234, 240 (Tex.Crim.App.1997); *see also Weyandt v. State*, 35 S.W.3d 144, 149 (Tex. App.-Houston [14th Dist.] 2000, no pet.) (applying *Malik* because jury charge did not track allegations in indictment). In a legal-sufficiency review, this standard ensures that a judgment of acquittal is reserved for those cases in which the State actually fails to prove the crime, rather than allowing acquittal for mere error in

the jury charge submitted. *Malik*, 953 S.W.2d at 240. The factual sufficiency of the evidence is also measured against the hypothetically correct jury charge. *Weyandt*, 35 S.W.3d at 153; *see also Adi v. State*, 94 S.W.3d 124, 130 (Tex.App.-Corpus Christi 2002, pet. ref'd) (applying hypothetically correct jury charge to factual-sufficiency review and noting Texas Court of Criminal Appeals has apparently not addressed question of whether *Malik* applies to factual-sufficiency review). The hypothetically correct jury charge is one that accurately sets forth the law, is authorized by the indictment, does not unnecessarily increase the State's burden of proof or unnecessarily restrict its theories of liability, and adequately describes the offense for which the defendant was tried. *Malik*, 953 S.W.2d at 240.

The hypothetically correct jury charge in this case would have required the State to prove that appellant unlawfully appropriated 68 computer processors, the total value of which exceeded $20,000. As noted above, appellant was arrested after being found in possession of 35 Intel Confidential Pentium III Xeon 667 processors and 33 Intel Confidential 750 processors. The processors were admitted in evidence at trial. According to Anderson's uncontroverted testimony, the total value of these products exceeded $20,000. Because we conclude a rational trier of fact could have found beyond a reasonable doubt that the value of the processors exceeded $20,000, we overrule appellant's fourth issue. After applying the factual-sufficiency standard of review, we conclude the evidence is

---

5. The record shows that the full description of the Xeon processor found in appellant's possession is "Intel Confidential Pentium III Xeon 667" processor. When Anderson testified to the value of the processors, he called these processors "Xeon processors" without saying the word "Pentium." Based on this testimony, and the "Pentium Processors" language in the indictment, appellant has subtracted the value of the Xeon processors ($414 per Xeon processor) from the total amount given by Anderson, to conclude the State failed to prove value in excess of $20,000.

factually sufficient to support the jury's finding in this regard. Accordingly, we also overrule appellant's fifth issue.

## IV. VENUE

In his sixth and final issue, appellant contends the trial court failed to properly charge the jury on venue.[6] We review alleged charge error by answering two questions:

(1) Did error actually exist in the charge? and

(2) If so, did sufficient harm result from the error to require reversal?

*See* TEX.CODE CRIM. PROC. arts. 36.15, 36.19; *Posey v. State,* 966 S.W.2d 57, 60 (Tex. Crim.App.1998).

The general rule is that venue is proper in the county in which the offense was committed. *See* TEX.CODE CRIM. PROC. art. 13.18. However, article 13.08 of the Texas Code of Criminal Procedure applies when, as here, there is evidence that the offender transported the property from one county to another. *See* TEX.CODE CRIM. PROC. art. 13.08; *Stewart v. State,* 44 S.W.3d 582, 586–87 (Tex.Crim.App.2001). The theft-specific venue statute states:

> Where property is stolen in one county and removed by the offender to another county, the offender may be prosecuted either in the county where he took the property or in any other county through or into which he may have removed the same.

TEX.CODE CRIM. PROC. art. 13.08.

The jury was free to find appellant guilty of theft under a theft-by-receiving stolen property theory if the evidence supported that conclusion. *See* TEX. PEN.CODE § 31.03(b)(2). Appellant complains that the jury charge accurately represented

venue only under the theory that appellant stole the processors from Compaq's Houston campus, located in Harris County, but was inaccurate under a theft-by-receiving theory if the jury believed appellant unlawfully appropriated the processors by receiving them in Fort Bend County. *See* TEX. PEN.CODE § 31.03(b)(2). The essence of appellant's complaint is that, because the jury could have believed appellant knowingly received stolen processors in Fort Bend County, instead of finding he unlawfully appropriated the processors in Harris County, he was entitled to a more specific venue instruction.

In support of his argument appellant presents three jury instructions which he requested, but which the trial court refused to include in its charge:

(a) If you the jury find the State did not prove beyond a reasonable doubt that the defendant received the property in question in Harris County, Texas, you must find the defendant NOT GUILTY.

(b) If you the jury find the State did not prove beyond a reasonable doubt that the defendant was involved in the theft of the stolen property in Harris County, Texas, you must find the defendant NOT GUILTY.

(c) If you the jury find that the property in question was recovered in Fort Bend County, Texas, you must find the defendant NOT GUILTY.

The trial court properly refused to submit these instructions to the jury because each instruction misstates the law. *See Mutscher v. State,* 514 S.W.2d 905, 926 (Tex.Crim.App.1974); *Pimentel v. State,* 710 S.W.2d 764, 769 (Tex.App.-San Antonio 1986, pet. ref'd). Both proposed instruc-

---

**6.** We do not address the sufficiency of the evidence to prove venue because that issue is not before this court.

tions (a) and (b) would have required the State to prove venue beyond a reasonable doubt, when the State is only required to prove venue by a preponderance of the evidence. *See* TEX.CODE CRIM. PROC. art. 13.17; *Murphy v. State,* 112 S.W.3d 592 (Tex.Crim.App.2003). Additionally, proposed instruction (a) incorrectly makes receipt of the stolen property in Harris County a necessary condition for a finding of guilt. Proposed instruction (b) is also incorrect because the jury could have found appellant guilty of the lesser-included offense of theft of property exceeding $1,500 in value, but less than $20,000 in value, if it believed appellant knowingly received ten stolen processors in Fort Bend County and then transferred them to Harris County. *See* TEX. PEN.CODE § 31.03(e)(4)(A). As appellant concedes on appeal, proposed instruction (b) also arguably constitutes an impermissible comment on the weight of the evidence. *See Stone v. State,* 703 S.W.2d 652, 655 (Tex.Crim. App.1986). Proposed instruction (c) is incorrect because under the theft-specific venue statute, appellant could have been found guilty in Harris County for theft committed in Harris County even if the stolen items were recovered in Fort Bend County. *See* TEX.CODE CRIM. PROC. art. 13.08.

To the extent appellant's proposed jury instructions were sufficient to apprise the trial court of the complaint he presents on appeal, we find appellant's complaint is without merit because the trial court's charge on venue was correct. It tracked the language of the theft-specific venue statute. *See* TEX.CODE CRIM. PROC. art. 13.08. Accordingly, the charge did not allow the jury to convict appellant unless it found the theft occurred in Harris County or appellant brought stolen property into Harris County after unlawfully appropriating it in Fort Bend County. In the event of the latter, under the charge, the jury would have found appellant guilty of theft of property exceeding $1,500 in value, but less than $20,000 in value, because only ten of the processors were recovered in Harris County. *See* TEX. PEN.CODE § 31.03(e)(4)(A). The jury charge allowed appellant to argue he was either not guilty, or, if guilty, he was guilty only of knowingly receiving stolen property worth more than $1,000 but less than $20,000, and removing the property to Harris County. The trial court's charge did not allow a conviction for the greater offense if the jury concluded appellant received all of the stolen property in Fort Bend County, knowing it was stolen, rather than stealing it in Harris County. Because the court's jury charge was correct as to venue, we overrule appellant's sixth issue.

Having overruled all of appellant's issues, we affirm the trial court's judgment.