Affirmed and Opinion filed July 24, 2008








Affirmed and Opinion filed July 24, 2008.

 

 

In The

 

Fourteenth Court of
Appeals

____________

 

NO. 14-07-00683-CR

____________

 

CHRISTOPHER SHANE SPENCER, Appellant

 

V.

 

STATE OF TEXAS, Appellee

 



 

On Appeal from the 232nd
District Court

Harris County, Texas

Trial Court Cause No. 1106912

 



 

O P I N I O N

A jury convicted appellant Christopher Spencer of robbery
and assessed punishment at five years= confinement.  In
three issues, appellant contends (1) the trial court erred in allowing the
State to introduce evidence of gang membership at the guilt/innocence phase of
the trial; (2) the evidence was factually insufficient to prove he committed
robbery; and (3) the trial court erred in overruling his objection to the State=s closing argument. 
We affirm.








I. FACTUAL AND PROCEDURAL BACKGROUND

On March 4, 2007, Samir Diaz (ADiaz@) attended a
quincea_era with his
friend, Shelby.[1] 
He had been invited to the party by Daniel, whom he had known since the fifth
or sixth grade.[2] 
Diaz testified that he consumed three of four drinks of tequila and coke at the
party.  Shortly after midnight, Diaz and Daniel left the quincea_era to go to
Daniel=s parents house
for an after-party.  At the after-party, Diaz and others stood outside to
listen to music, drink, and socialize.  Diaz testified that he consumed five or
six Budweiser beers at the gathering within approximately an hour to an
hour-and-a-half, and that he was Abuzzed.@








Diaz testified that appellant began Atalking mess@ to him at the
party and called him a Apussy@ because he had
never joined the neighborhood gang.  When appellant approached Diaz and began
pointing in his face, Diaz attempted to ignore him.  When Diaz stepped away to
go to the bathroom, appellant hit Diaz in his right eye, causing him to fall to
the ground and momentarily black out.  When he regained consciousness, he felt
several people kicking him in his front and on his back.  After Diaz was kicked
seven or eight times, his friend Martin intervened and pushed people away. 
Diaz testified that appellant approached him on the ground, told him Agive me these damn
shoes,@ and  removed Diaz=s shoes.[3] 
Appellant then took Diaz=s cell phone from the ground and yanked
his watch from his wrist.[4] 
When Diaz attempted to retrieve his shoes, Martin told him to leave and go home
because Ait was possible
that they were going to jump me again.@  Diaz
subsequently walked home.[5]  
    When Diaz arrived home, his mother and father tried to calm him and prevent
him from returning to Daniel=s house to retrieve his possessions.  Diaz
testified that he felt angry and embarrassed because he had been beaten up and
his possessions had been stolen.  When Diaz saw Daniel on the street the next
day, he asked him whether he knew what had happened to his shoes, to which
Daniel responded Ano.@  Diaz testified
that, later that day, his father intervened when he and appellant Awere about to get
into it.@  When appellant
later drove by Diaz=s house again with four or five people in
his car, Diaz=s mother became scared and called 9-1-1.

In response to the call, Deputy Michael Santos (ASantos@) was dispatched
to investigate the disturbance.  Santos testified that Diaz had a black eye and
was very  emotional and embarrassed.  He also testified that Diaz was scared
that the group of boys was going to return and retaliate against him.  After he
spoke with Diaz, Santos went to appellant=s home but
appellant was not there.  Santos subsequently issued a warrant and appellant
was apprehended the following day.  The police report reflected that Diaz=s shoes, wallet,
and phone were taken.[6]








Martin=s brother, Alfredo, a defense witness,
testified that he, appellant, Martin, and Marlen Luna (AMarlen@) also attended
the quinceañera and the after-party at Daniel=s house. 
According to Alfredo, Diaz consumed approximately five shots of tequila at the
quinceañera and later consumed more tequila at the after-party.  Alfredo
testified that Diaz was in Apretty bad shape@ and was swaying
back and forth and speaking slowly.  Alfredo observed Diaz arguing with Daniel
and appellant and then say something to them that made them mad.  According to
Alfredo, Diaz started the fight by hitting appellant on the chin.  After
appellant pushed and punched Diaz, Alfredo and Daniel broke up the fight. 
Alfredo testified that Diaz fell down during the altercation.  Alfredo further
testified that he did not see appellant take Diaz=s shoes or any of
Diaz=s possessions. 
Afterwards, Alfredo, Martin, Marlen, and appellant left Daniel=s house to go to
McDonald=s so that Alfredo
could get something to eat.  When they returned to Daniel=s house, Alfredo
noticed that Diaz was not wearing his shoes.

Marlen testified that she, Alfredo, Martin, and their
friend David initially attended the same quinceañera as appellant, but that
appellant later drove Alfredo, Martin, and David to another  quinceañera and
returned to stay with her.  After she and appellant left, they picked up Martin
and Alfredo at the other party and then drove to Daniel=s house.  When
they arrived, Marlen noticed that Diaz was Awasted@ and was unable to
stand up straight. According to Marlen, Daniel and Diaz were arguing because
Daniel wanted Diaz to go home but Diaz refused to do so.  Marlen testified that
when appellant attempted to help Daniel by telling Diaz to go home, Diaz pushed
appellant.  After appellant pushed Diaz back, they began fighting.  After the
fight ended, Marlen, Alfredo, Martin, David, and appellant went to McDonald=s so that David
could get something to eat.  Marlen testified that she did not see appellant or
anyone else take Diaz=s shoes, cell phone, or watch.  Upon
returning from McDonald=s, Marlen noticed that Diaz was no longer
wearing his shoes.  Appellant subsequently took Marlen home.

The jury found appellant guilty of robbery and assessed his
punishment at five years= confinement.  Appellant timely filed this
appeal.

II.  ANALYSIS 

A.      Admissibility
of Gang-Related Evidence      








In his first issue, appellant argues the trial court erred
in permitting the State to Ainterject alleged gang membership at the
guilt/innocence phase of the trial.@  Specifically, he
contends the evidence was irrelevant, highly prejudicial, and constituted
inadmissible character evidence.

After voir dire and prior to opening statements, defense
counsel informed the court of the State=s intention to
introduce evidence regarding defendant=s alleged gang
membership.  Defense counsel objected, arguing the evidence was inadmissible
character evidence under Rule 404(a).  The State countered the evidence was
admissible under Rule 404(b) because it showed defendant=s motive for the
robbery.  The court overruled defense counsel=s objection.

On direct
examination, Diaz testified his neighborhood was no longer safe due to gang
rivalry.  Defense counsel objected to the introduction of any evidence
pertaining to gangs as irrelevant and re-urged his previous objection.  After
the court overruled the objection, it granted defense counsel=s request for a
running objection.  The State then elicited the following testimony from Diaz:
(1) the Gulf Bank Crips is the neighborhood gang; (2) Diaz knows some of the
members of the Gulf Bank Crips; (3) Diaz has never been a member of a gang,
although he has been asked two or three times to join the Gulf Bank Crips; (4)
Diaz is not sure if appellant is a member of the Gulf Bank Crips; (5) Diaz
still hangs out with friends who are members of the Gulf Bank Crips because he
was friends with them before they joined and he does not judge them; (6) Diaz
does not know how many people who attended the after-party at Daniel=s house were not
gang members; and (7) appellant called Diaz a Apussy@ because he never
joined the neighborhood gang.         








Appellant first argues Diaz=s gang-related
testimony was inadmissible because it was irrelevant.  In support of his
argument, he cites to Dawson v. Delaware, 503 U.S.159 (1992) and Mason
v. State, 905 S.W.2d 570 (Tex. Crim. App. 1995), for the proposition that,
in order to show the relevance of a defendant=s membership in an
organization or group, the State must show (1) proof of the group=s violent and
illegal activities, and (2) the defendant=s membership in
the organization.  Dawson, 503 U.S. at 163-67; Mason, 905 S.W.2d
at 577.  However, as the State correctly notes, these cases involved the
admissibility of character evidence during the punishment phase of a trial and,
thus, are inapposite here.

Appellant next argues the gang-related evidence was
inadmissible under Texas Rules of Evidence 402 and 404.  Specifically, he
contends that by introducing irrelevant evidence of his alleged gang
affiliation, the State attempted to show that he acted in conformity with his
bad character when he committed the robbery, thus violating Rule 404(a).

Rule 404(b) provides, in relevant part:

Evidence of other crimes, wrongs or acts is not
admissible to prove the character of a person in order to show action in
conformity therewith.  It may, however, be admissible for other purposes, such
as proof of motive, opportunity, intent, preparation, plan, knowledge,
identity, or absence of mistake or accident . . . .

Tex. R. Evid. 404(b).  As the Texas Court of Criminal
Appeals has noted, Ait has long been the rule in this State
that the jury is entitled to know all the relevant surrounding facts and
circumstances of the charged offense; an offense is not tried in a vacuum.@  Moreno v.
State, 721 S.W.2d 295, 301 (Tex. Crim. App. 1986) (en banc).  Appellate
review on the admissibility of evidence is conducted under an abuse of
discretion standard.  Weatherred v. State, 15 S.W.3d 540, 542 (Tex.
Crim. App. 2000).  An appellate court is bound to uphold the trial court=s ruling regarding
the admissibility of evidence if it was within the zone of reasonable
disagreement.  Id.








The State=s theory was that appellant=s motive in
committing the robbery was gang-related; that is, appellant robbed Diaz because
he was not a member of a gang.  To support its theory, the State offered Diaz=s testimony that
(1) the Gulf Bank Crips are the neighborhood gang; (2) his neighborhood was no
longer safe due to gang rivalry; (3)  he has been asked on several occasions to
join the gang but has not done so; (3) he still hangs out with friends who are
members of the Gulf Bank Crips; (4) he does not know how many of those who
attended Daniel=s after-party were non-gang members; and
(5) appellant called Diaz a Apussy@ because he had
never joined the gang.  The State contends the evidence of appellant=s gang affiliation
was used to show motive, rather than character conformity, thus making the
evidence admissible under Rule 404.

The Court of Criminal Appeals has held that gang membership
evidence is admissible under Rule 404(b) (and Rule 402) if it is relevant to
show a non-character purpose that, in turn, tends to show the commission of the
crime.  See Ortiz v. State, 93 S.W.3d 79, 94 (Tex. Crim. App. 2002)
(finding evidence of incarcerated defendant=s gang affiliation
admissible under Rule 404(b) to show a variety of non-character purposes
relevant to showing defendant=s guilt); Vasquez v. State, 67
S.W.3d 229, 239B40 (Tex. Crim. App. 2002)  (citing Medina
v. State, 7 S.W.3d 633, 643 (Tex. Crim. App. 1999)) (concluding evidence of
appellant=s gang affiliation was relevant to show motive for
allegedly gang-related crime).  Because evidence of appellant=s gang affiliation
was relevant to show his motive for the robbery, rather than mere conformity
with character, it was admissible under Rules 402 and 404.[7]








Finally, appellant=s argument that
admission of the evidence violated Rule 403 because it Acreated prejudice
against [him]@ is equally unavailing.  To violate Rule 403, it is
not enough that the evidence is prejudicial; instead, it must be unfairly
prejudicial.  Vasquez, 67 S.W.3d at 240; Rogers v. State, 991
S.W.2d 263, 266 (Tex. Crim. App. 1999).  Unfair prejudice occurs when the
evidence has Aan undue tendency to suggest decision on an improper
basis, commonly, though not necessarily, an emotional one.@  Vasquez,
67 S.W.3d at 240 (citation omitted).  The potential improper basis would be the
use of gang affiliation to demonstrate that appellant was a bad person and that
he acted in conformity with his bad character.  See id.  However, we
conclude that the trial court did not err in finding that this potential
character conformity inference did not substantially outweigh the relevant
purpose of showing motive for the robbery.  Appellant=s gang affiliation
was not only relevant but absolutely critical to show the motive for his
crime.  See Beltran v. State, 99 S.W.3d 807, 811 (Tex. App.CHouston [14th
Dist.] 2003, pet. ref=d) (finding admission of evidence
regarding  appellant=s gang affiliation absolutely necessary to
show motive for crime).  Appellant=s first issue is
overruled. 

B.      Factual
Sufficiency 

In his second issue, appellant contends the evidence was
factually insufficient to prove he committed robbery as defined under section
29.02 of the Texas Penal Code.  Specifically, he argues the evidence failed to
show appellant=s assault of Diaz was related to the theft of his
property.  He further contends Diaz=s account of the
events at issue was refuted by other witnesses.

Before we address factual sufficiency, we note appellant
has failed to bring a challenge to the legal sufficiency of the evidence. 
Thus, he has conceded the evidence is legally sufficient to permit a rational
jury to find the essential elements of the offense.  See Clewis v. State,
922 S.W.2d 126, 134B36 (Tex. Crim. App. 2006) (holding the
factual sufficiency review begins with presumption the evidence supporting the
jury=s verdict was
legally sufficient).  If the evidence were not legally sufficient, this court
would not reach a factual sufficiency point of error, having acquitted the
defendant.  See Watson v. State, 204 S.W.3d 404, 415B16 (Tex. Crim.
App. 2006).








Under a factual sufficiency review, a verdict will not be
set aside unless (1) the evidence is so weak that the verdict is clearly wrong
and manifestly unjust or (2) the verdict is against the great weight and
preponderance of the evidence.  See Grotti v. State, ___ S.W.3d ___,
2008 WL 2512832, at *7 (Tex. Crim. App. June 25, 2008); Roberts v. State,
220 S.W.3d 521, 524 (Tex. Crim. App. 2007).  Under the first prong, an
appellate court cannot conclude a conviction is Aclearly wrong@ or Amanifestly unjust@ simply because it
would have voted to acquit had it been on the jury.  Watson, 204 S.W.3d
at 417.  Instead, a reviewing court=s authority to
disagree with the jury=s credibility determination is appropriate
only when the record clearly indicates it is necessary to correct a manifest
injustice.  Swearingen v. State, 101 S.W.3d 89, 97 (Tex. Crim. App.
2003).  Similarly, under the second prong, a reviewing court cannot declare
that conflict in the evidence justifies a new trial simply because it disagrees
with the jury=s resolution of that conflict.  Watson, 204
S.W.3d at 417.  Before finding that evidence is insufficient to support the
verdict under the second prong, a reviewing court must be able to say, with
some objective basis in the record, that the great weight and preponderance of
the evidence, albeit legally sufficient, contradicts the jury=s verdict.  Id. 
Unlike a legal sufficiency review under which the evidence is viewed in the
light most favorable to the prosecution, a factual sufficiency review requires
the court to view all of the evidence in a neutral light.  See id. at
415.  With these principles in mind, we turn to the record before us.








A person commits robbery if, in the course of committing
theft, and with the intent to obtain or maintain control of the property, he
intentionally, knowingly, or recklessly causes bodily injury to another.  See
Tex. PenAl Code Ann. ' 29.02 (Vernon
2003).  Appellant argues that the evidence fails to establish the requisite
connection between Diaz=s assault and the theft of his
possessions.  His argument is without merit.  The record reflects that
appellant called Diaz a Apussy@ at Daniel=s after-party
because Diaz never joined the neighborhood gang.  When Diaz attempted to walk
away, appellant hit him in his right eye, knocking him to the ground. 
Appellant then took Diaz=s shoes, cell phone, and watch.  In a
robbery case, a theft occurring immediately after an assault will support an
inference that the assault was intended to facilitate the theft.  Cooper v.
State, 67 S.W.3d 221, 224 (Tex. Crim. App. 2002).  Moreover, such an
inference will support a conviction even in the absence of additional evidence
supporting the nexus.  See id.  The evidence here is sufficient to
support an inference that appellant assaulted Diaz in the course of committing
theft.  See id.

Appellant also contends the evidence is factually
insufficient because Alfredo and Marlen testified they never saw appellant take
Diaz=s shoes, cell
phone, or watch.  Instead, they both testified that, after returning from
McDonald=s, they noticed
that Diaz was not wearing his shoes.  However, as previously discussed, the
jury is the exclusive judge of the credibility of the witnesses and the weight
to be accorded their testimony.  See Johnson, 23 S.W.3d at 9.  The jury
could have chosen to believe all, some, or none of the testimony presented.  See
Chambers v. State, 805 S.W.2d 459, 461 (Tex. Crim. App. 1991) (en banc); Denman
v. State, 193 S.W.3d 129, 132 (Tex. App.CHouston [1st Dist.]
2006, pet. ref=d).  Further, the testimony of a single eyewitness may
be sufficient to support a jury=s verdict.  Walker v. State, 180
S.W.3d 829, 832 (Tex. App.CHouston [1st Dist.] 2005, no pet.).  Here,
the jury could have believed Diaz=s testimony and
chosen to disbelieve Alfredo and Marlen=s testimony. 
Appellant=s second issue is overruled.

C.      Jury
Argument 

In his third issue, appellant contends the trial court
erred in overruling defense counsel=s objection to the
State=s closing
argument.  Specifically, he argues that several portions of the prosecutor=s argument were
(1) outside of the record; (2) an improper plea for law enforcement; and (3)
designed to inflame or bias the jury into finding appellant guilty of robbery
by virtue of gang activity.[8]








Proper jury argument falls within one of four categories:
(1) summation of the evidence; (2)          reasonable deduction from the
evidence; (3) in response to argument of opposing counsel; and (4) plea for law
enforcement.  See Wesbrook v. State, 29 S.W.3d 103, 115 (Tex. Crim. App.
2000).  However, even when an argument exceeds the permissible bounds of these
approved areas, an error will not constitute reversible error unless, in light
of the record as a whole, the argument is extreme or manifestly improper,
violative of a mandatory statute, or injects new facts harmful to the accused
into the trial proceeding.  Id.   Attorneys may draw all reasonable,
fair, and legitimate inferences from the facts in evidence.  See Shannon v.
State, 942 S.W.2d 591, 597 (Tex. Crim. App. 1996); Allridge v. State,
762 S.W.2d 146, 156 (Tex. Crim. App. 1988).

Appellant complains about several remarks that the
prosecutor made in the following portion of the State=s closing
argument:








PROSECUTOR: Why do you think [Diaz] sat up in that chair with a
slouched posture and refused to look over to that side of the room?  Why do you
think he [sic] evasive when he was being questioned at times?  Do you think it
has anything to do with the fact that Chris Spencer was driving past his house
the day of the robbery with five of his friends in the car?  Don=t you think that has something to
do with it?  Admittedly folks he=s a young kid.  He=s grown up in a rough area of town.  Most of the people
that he=s grown up with have joined gangs
but he hadn=t.  Why hadn=t he?  >Cause he knows that=s not the right thing to do.  And
that=s the same thing that brought him
here despite the danger that he may be putting himself in by coming here to
testify.  Don=t you think he=s worried about his mom, his little
sister and himself, about what=s going to happen because he came here and told you what happened to
him?

DEFENSE COUNSEL: Objection Your Honor that=s outside the record and improper
plea for law enforcement.

THE COURT: Overruled.

Appellant first argues the prosecutor=s last remark
regarding Diaz=s concern for himself and his family is unsupported by
the record.  He contends Santos=s testimony that Diaz=s parents and
sister were present when he arrived at the scene of the disturbance, and that
Diaz appeared embarrassed and emotional, does not support the State=s argument that
Diaz was worried about the consequences of his testimony with regard to himself
and his family.  However, Santos also testified that Diaz was crying and Awas scared that
this group of guys were going to come back and kind of retaliate against him is
what he was more afraid of.@  Thus, when viewed in context of the
entire record, the State=s closing remark that Diaz was worried
about the consequences of his testimony with regard to his family=s safety was a
reasonable deduction from the evidence presented at trial.








Appellant also complains that the prosecutor=s remarks that
Diaz had not joined a gang because he knew Athat=s not the right
thing to do@ and Athat=s the same thing
that brought him here@ to testify are outside of the record.[9] 
With regard to the first remark, the record reveals that when asked why he had
not joined a gang despite being asked to do so on several occasions, Diaz testified,
A[i]t=s not something I
wanted to do.@  Based on this testimony, the prosecutor drew a
reasonable and legitimate inference that  Diaz did not join a gang because he
did not think it was the right thing to do.  See Shannon, 942 S.W.2d at
597.  As such, it was not an improper jury argument.

As to the second remarkCAAnd that=s the same thing
that brought him here despite the danger that he may be putting himself in by
coming here to testify@Cin light of the
prosecutor=s preceding statement, we interpret Athat=s the same thing@ to mean that Diaz
decided to testify because he knew it was the right thing to do.  However,
contrary to the State=s suggestion that he decided to testify
out of a sense of propriety, the record shows that Diaz did not want to testify
and only did so because he had been subpoenaed.  This remark was unsupported by
the record and, thus, improper.  Because the trial court erred in overruling
defense counsel=s objection, we next determine whether
such error was harmless.

If a jury argument exceeds the bounds of proper argument,
the trial court=s erroneous overruling of a defendant=s objection is not
reversible error unless it affected the defendant=s substantial
rights.  See Martinez v. State, 17 S.W.3d 677, 692 (Tex. Crim. App.
2000).  In determining whether the defendant=s substantial
rights were affected, we consider (1) the severity of the misconduct (i.e.,
the prejudicial effect of the prosecutor=s remarks); (2)
curative measures; and (3) the certainty of conviction absent the misconduct.  Id.
at 692B93.  Here, we find that the severity of the prosecutor=s misconduct was
minimal.  The focus of her argument was on Diaz=s fear of
retaliation for his testimony rather than on his reasons for testifying.  See
id.  Even absent the alleged misconduct, there was a significant degree of
certainty of conviction given the evidence presented against appellant at
trial.  See id.  Moreover, other than perfunctorily concluding that the
prosecutor=s remarks had a substantial, profound, and injurious
effect or influence on the jury=s verdict, appellant offers no argument or
analysis to support his argument.  See Tex. R. App. P. 38.1(h).  Therefore, we hold
that although the trial court erred in overruling appellant=s objection, such
error did not affect his substantial rights.  See Tex. R. App. P.  44.2(b). 
Appellant=s third issue is overruled.








III.  CONCLUSION

Having overruled appellant=s three issues, we
affirm the judgment of the trial court.

 

 

 

/s/      John S. Anderson

Justice

 

 

 

 

Judgment rendered
and Opinion filed July 24, 2008.

Panel consists of
Justices Anderson, Yates, and Brown.

Do Not Publish C Tex. R. App. P. 47.2(b).

 









[1]  The quincea_era is, in
some Spanish-speaking regions of the Americas, a young woman=s celebration of her fifteenth birthday, which is
commemorated in a unique and different way from her other birthdays.  See http://www.wikipedia.org.





[2]  At the time of trial, Diaz was 19 years old.





[3]  According to Diaz, the Air Jordan basketball shoes
he was wearing that night cost between $100 and $150.





[4]  Diaz=s phone cost
$300.  His watch had been a present from his mother for his 18th birthday.





[5]  Diaz testified that he and Daniel live on the same
street and that Daniel=s house is approximately a two-minute walk from his
house.





[6]  On re-direct, Diaz clarified that his wallet had not
been taken.





[7]  The fact that Diaz was unsure whether appellant was
a member of the Gulf Bank Crips does not render the gang-related evidence
inadmissible.  Diaz testified that he had met appellant in junior high school
when Diaz was in the seventh grade.  He testified his neighborhood was no
longer safe due to gang rivalry, and that the Gulf Bank Crips was the
neighborhood gang.  Diaz knew some members of the Gulf Bank Crips, and some of his
childhood friends were gang members.  Diaz had not joined the neighborhood gang
despite being asked to do so several times.  Diaz testified that appellant
called him a Apussy@ at the
after-party because he had not joined the gang.  As the trier of fact, the jury
is the sole judge of the credibility of the witnesses and the weight to be
given to their testimony.  See Fuentes v. State, 991 S.W.2d 267, 271
(Tex. Crim. App. 1999); Bargas v. State, 252 S.W.3d 876, 887 (Tex. App.CHouston [14th Dist.] 2008, no pet.).  Further, the
jury is entitled to draw reasonable inferences from circumstantial evidence to
ultimate facts.  See Villani v. State, 116 S.W.3d 297, 303 (Tex. App.CHouston [14th Dist.] 2003, pet. ref=d).  In light of Diaz=s testimony, the jury could have reasonably inferred that appellant was
affiliated with, or a member of, the Gulf Bank Crips.





[8]  Although appellant initially frames his argument as
a challenge to the prosecutor=s closing
argument on these three grounds, a review of his brief reveals that he argues
only that the record does not support the prosecutor=s argument.  Indeed, to each challenged portion of the
State=s argument, appellant asserts that A[t]he record is void of any evidence to substantiate
the State=s closing argument,@ or
A[t]he record also does not substantiate the State=s final argument.@ 
Because appellant fails to provide any argument or citation to authority to
support his assertions that the State=s
closing arguments were outside of the record, an improper plea for law
enforcement, or designed to bias the jury, he has waived these grounds on
appeal. See Tex. R. App. P.
38.1(h); Salazar v. State, 38 S.W.3d 141, 147 (Tex. Crim. App.
2001) (dismissing points of error where appellant=s brief presented no authority in support of his argument).





[9]  The State argues that defense counsel did not object to these two
remarks and, in failing to do so, waived his complaint on appeal.  See Tex. R. App. P. 33.1.  However, it is unclear whether
defense counsel=s objection was aimed solely at the
prosecutor=s final remark regarding Diaz=s fear of retaliation, or whether
it was also in response to her remarks related to Diaz=s reasons for not joining a gang
and for testifying.  We therefore give appellant the benefit of the doubt and
assume that his trial counsel=s objection was directed to all three remarks.