COURT OF APPEALS

                                         SECOND
DISTRICT OF TEXAS

                                                      FORT
WORTH

 

                                         NOS.  02-07-308-CR

       02-07-309-CR

       02-07-310-CR       

       02-07-311-CR

       02-07-312-CR

       02-07-313-CR

       02-07-314-CR

       02-07-315-CR

       02-07-316-CR

 

DONN DEVERAL MARTIN                                                      APPELLANT

A/K/A DON DEVERAL MARTIN

 

                                                      V.

 

THE STATE
OF TEXAS                                                                 STATE

------------

 

             FROM THE 372ND DISTRICT COURT OF TARRANT COUNTY

 

                                                  ------------

                                  MEMORANDUM OPINION[1]

                                                  ------------

                                              I.
Introduction

In six
issues, Appellant Donn Deveral Martin appeals his nine convictions.  We affirm.








                             II.  Factual and Procedural Background

Martin,
a resident of Abilene, occasionally slept over at his daughter=s house
in Arlington.  At times, Martin was alone
behind closed doors with S.S., his five-year-old granddaughter.  On the morning of March 6, 2006, S.S. told
her mother that Martin had come into her room the previous night and licked her
Abutt.@[2]  During the investigation, the police
discovered hundreds of child pornography images on Martin=s
computer, including photographs of S.S.

Following
the investigation, the State charged Martin, by multiple indictments, with four
counts of aggravated sexual assault of a child under fourteen years of age,
three counts of sexual performance by a child, and two counts of indecency with
a child.  Martin pleaded not guilty, and
the case proceeded to trial.  After
hearing the evidence, the jury found Martin guilty as charged on all counts and
in a separate punishment hearing sentenced him to life on each of the four
counts, of aggravated sexual assault and to twenty years on each of the
remaining counts.  This appeal followed.

                                       III.  Motion to Suppress








In his
first issue, Martin contends that the trial court erred in denying his motion
to suppress evidence obtained from the illegal search of his computer.  He argues that his wife did not have
authority to consent to the search; and therefore, the warrantless search by
the police was unreasonable. 
Additionally, Martin argues that because his wife lacked authority to
consent and because his oral consent was invalid[3]
the police lacked effective consent to search his computer.  However, since Martin=s wife
did have authority to consent and she did, in fact, consent, the validity of
Martin=s
consent is moot and therefore, will not be addressed.

A.  Standard of Review








We
review a trial court=s ruling on a motion to suppress
evidence under a bifurcated standard of review. 
Amador v. State, 221 S.W.3d 666, 673 (Tex. Crim. App. 2007);  Guzman v. State, 955 S.W.2d 85, 89
(Tex. Crim. App. 1997).  We must view the
evidence in the light most favorable to the trial court=s
ruling.  Wiede v. State,
214 S.W.3d 17, 24 (Tex. Crim. App. 2007); 
State v. Kelly, 204 S.W.3d 808, 818 (Tex. Crim. App. 2006).  When the record is silent on the reasons for
the trial court=s ruling, or when there are no
explicit fact findings and neither party timely requested findings and
conclusions from the trial court, we imply the necessary fact findings that
would support the trial court=s ruling
if the evidence, viewed in the light most favorable to the trial court=s
ruling, supports those findings.  Id.;
see Amador, 221 S.W.3d at 673; Wiede, 214 S.W.3d at 25.  We then review the trial court=s legal
ruling de novo unless the implied fact findings supported by the record are
also dispositive of the legal ruling.  Kelly,
204 S.W.3d at 819.

We must
uphold the trial court=s ruling if it is supported by
the record and is correct under any theory of law applicable to the case even
if the trial court gave the wrong reason for its ruling.  State v. Stevens, 235 S.W.3d 736, 740
(Tex. Crim. App. 2007); Armendariz v. State, 123 S.W.3d 401, 404 (Tex.
Crim. App. 2003), cert. denied, 541 U.S. 974 (2004).

B.  Applicable Law

The
Fourth Amendment protects against unreasonable searches and seizures by
government officials.  U.S. Const. amend.
IV; Wiede, 214 S.W.3d at 24.  A
warrantless search is unreasonable per se unless it fits into one of the few
specifically defined and well established exceptions.  Minnesota v. Dickerson, 508 U.S. 366,
372, 113 S. Ct. 2130, 2135 (1993); see Estrada v. State, 154 S.W.3d 604,
608 n. 12 (Tex. Crim. App. 2005).  One
such exception is a warrantless search conducted after a person has given
consent.  Brimage v. State, 918
S.W.2d 466, 480 (Tex. Crim. App. 1994).








A less
common variation of the standard consent case is that of third party
consent.  The Fourth Amendment recognizes
a valid warrantless search if the officers secure the consent of a third party
who possesses common authority over the premises or effects sought to be
inspected.  United States v. Matlock,
415 U.S. 164, 171, 94 S. Ct. 988, 993 (1974). 
Whether common authority exists, turns on evidence of Amutual
use of the property by persons generally having joint access or control for
most purposes.@ 
Id. at 171 n. 7; Welch v. State, 93 S.W.3d 50, 52 (Tex.
Crim. App. 2002).  Furthermore, the court
of criminal appeals has emphasized that Athe
third party=s legal property interest is not
dispositive in determining whether he has the authority to consent to a search.@  Maxwell v. State, 73 S.W.3d 278, 281
(Tex. Crim. App. 2002).

C.  Applicable Facts








In
March, 2006, while investigating an outcry of sexual assault allegedly
committed by Martin against S.S., Detective Mike Weber of the Arlington police
department went to Martin=s home in Abilene and spoke with
Martin=s wife
Beverly.  Beverly discussed her and
Martin=s family
history with Detective Weber.  At some
point, Detective Weber asked whether there were any computers in the
house.  Beverly showed Detective Weber a
computer located in the downstairs hallway and Detective Weber asked if he
could take it with him.  Beverly
hesitated and said that she would need to call Martin, who was in the hospital
recovering from surgery, to ask his permission. 
She called Martin and informed him that the police were at the house and
were asking to take his computer.  Martin
replied, AWell, Bev, if that will clear
this up, give it to them.@ 
Beverly then signed a written consent form and turned the computer over
to Detective Weber.

D.  Analysis

Before
trial, Martin filed a motion to suppress the evidence obtained from his
computer on the grounds that the evidence had been illegally obtained.  Specifically, he argued that the search of
his computer was unreasonable because the police lacked valid consent to
search.

During
the suppression hearing, Beverly testified that the title to the house she and
Martin lived in was solely in her name, that she could go into any area of the
house, and that she had authority to use Martin=s
computer.  However, Martin argues that
because Beverly never used the computer without his help and because it
belonged solely to him, she did not have authority to consent to the search.  We disagree.

The
authority to consent is not determined by ownership or actual use but by joint
access or control.  See Matlock,
415 U.S. 164.  Here, Beverly shared equal
access with Martin.  Martin=s
computer was located in an open area of the house and not behind locked doors;
the computer did not have password protection except for internet purposes; and
there was no evidence in the record, nor did Martin direct us to any, that
Beverly was prohibited from using his computer.








Therefore,
it does not matter that Beverly never used Martin=s
computer without his help.[4]  The fact remains that she had access to and
authority to use his computer.  Martin
also argues that Beverly acknowledged her lack of authority to consent when she
told the police she needed to call Martin to get his permission.  Again, we disagree.

The fact
that Beverly called Martin to get his permission in no way diminishes her
authority to consent.  See Welch,
93 S.W.3d 50 (holding that third party consentCat least
a third party that has mutual accessCis valid
even when the owner is present and does not consent to the search).  Here, we=ve
already established that Beverly had mutual access to Martin=s
computer; therefore, Beverly=s
authority to consent is not contingent on Martin granting permission.  Id. 
In fact, Beverly only asked to call Martin because she was worried about
the integrity of his research, and not because she lacked authority.[5]  Therefore, Beverly provided valid and
effective consent when she signed the written consent form.








Because
the record supports a finding that Beverly had joint access to Martin=s
computer, and because Martin=s
arguments show, at most, a lack of equal, but not joint, access over his
computer, we conclude that Martin failed to demonstrate that the trial court
erred in denying his motion to suppress. 
Accordingly, we overrule Martin=s first
issue.

                                       IV.  Factual Sufficiency

In his
second issue, Martin argues that the evidence, when viewed in a neutral light,
is factually insufficient to support his nine convictions.  In the alternative, Martin asserts that even
if the evidence is factually sufficient to support the conviction for the March
5, 2006, count of aggravated sexual assault of a child under the age of
fourteen, it is insufficient to support the remaining eight convictions,
arguing that the State failed to identify him as the man in the
photographs.  We disagree.

A.  Standard of Review








When
reviewing the factual sufficiency of the evidence to support a conviction, we
view all the evidence in a neutral light, favoring neither party.  Watson v. State, 204 S.W.3d 404, 414
(Tex. Crim. App. 2006); Drichas v. State, 175 S.W.3d 795, 799 (Tex.
Crim. App. 2005).  We then ask whether
the evidence supporting the conviction, although legally sufficient, is
nevertheless so weak that the jury=s
determination is clearly wrong and manifestly unjust or whether conflicting
evidence so greatly outweighs the evidence supporting the conviction that the
jury=s
determination is manifestly unjust.  Watson,
204 S.W.3d at 414B15, 417; Johnson v. State,
23 S.W.3d 1, 11 (Tex. Crim. App. 2000). 
To reverse under the second ground, we must determine, with some
objective basis in the record, that the great weight and preponderance of all
the evidence, though legally sufficient, contradicts the verdict.  Watson, 204 S.W.3d at 417.








In determining
whether the evidence is factually insufficient to support a conviction that is
nevertheless supported by legally sufficient evidence, it is not enough that
this court Aharbor a subjective level of
reasonable doubt to overturn [the] conviction.@  Id. 
We cannot conclude that a conviction is clearly wrong or manifestly
unjust simply because we would have decided differently than the jury or
because we disagree with the jury=s
resolution of a conflict in the evidence. 
Id.  We may not simply
substitute our judgment for the jury=s.  Johnson, 23 S.W.3d at 12; Cain v.
State, 958 S.W.2d 404, 407 (Tex. Crim. App. 1997).  Unless the record clearly reveals that a
different result is appropriate, we must defer to the jury=s
determination of the weight to be given contradictory testimonial evidence
because resolution of the conflict Aoften
turns on an evaluation of credibility and demeanor, and those jurors were in
attendance when the testimony was delivered.@  Johnson, 23 S.W.3d at 8.  Thus, we must give due deference to the jury=s
determinations, Aparticularly those
determinations concerning the weight and credibility of the evidence.@  Id. at 9.

B.  Applicable Law

An
opinion addressing factual sufficiency must include a discussion of the most
important and relevant evidence that supports the appellant=s
complaint on appeal.  Sims v. State,
99 S.W.3d 600, 603 (Tex. Crim. App. 2003). 
As a fact finder, the jury is entitled to draw reasonable inferences
from circumstantial evidence to ultimate facts. 
Villani v. State, 116 S.W.3d 297, 303 (Tex. App.CHouston
[14th Dist.] 2003, pet. ref=d).  Thus, identity of a perpetrator can be proved
by direct or circumstantial evidence; 
eyewitness identification is not necessary.  Earls v. State, 707 S.W.2d 82, 85
(Tex. Crim. App. 1986); Couchman v. State, 3 S.W.3d 155, 162 (Tex. App.CFort
Worth 1999, pet. ref=d).

C.  Analysis

Out of
Martin=s nine
convictions, only one arose from S.S.=s
outcry.  The remaining eight
convictions  were the result of
photographs found on Martin=s
computer.  Because Martin=s
factual insufficiency argument is separated into (1) the conviction that arose
from S.S.=s outcry and (2) the convictions
that arose from the photographs, we will tailor our analysis to his arguments.








1.  Conviction Arising From S.S.=s Outcry

Martin
claims that the evidence is factually insufficient to support the aggravated
sexual assault conviction resulting from S.S.=s outcry
because S.S.=s testimony about the events
that occurred were unclear and lacked credibility.

S.S. was
six years old at the time of trial.  She
testified that she could not remember exactly what had happened to her when she
was five years old but, upon further questioning, she testified that she did
remember telling her mother that something bad had happened when her Agranddaddy@ had
been in the room with her.  On cross, in
response to the defense attorney=s
questions, S.S. testified that Ariel, King Triton, and Flounder, from the movie
The Little Mermaid, were real.  On
redirect, however, S.S. indicated that she had only seen Disney characters in a
movie and that a cartoon character, unlike her family, had never visited her in
her home or engaged in any realBlife
activities with her.  However, S.S.=s
testimony was not the only evidence put before the jury.








S.S.=s
mother, testified that on March 5, 2006, her father Martin had spent the night
at her house.  The following morning, her
five-year-old daughter, S.S., told her that Martin had Alicked
[her] butt . . . and [she] didn=t like
it.@  Martin acknowledged sleeping over at his
daughter=s house
on the night of the alleged incident but denied doing anything inappropriate to
his granddaughter.

The
State introduced evidence that during the subsequent sexual assault exam at the
hospital, S.S. repeated the same allegation to the doctor.  The doctor collected S.S.=s
underwear as evidence and a forensic biologist for the Tarrant County Medical
Examiner=s Office
examined them.  The forensic biologist
testified that DNA comprised of matter consistent with female vaginal
secretions combined with saliva had been identified and that Martin could not
be excluded as a contributor.  Martin
testified that a Atummy-blowing@ game
could have resulted in the saliva on S.S.=s
underwear.








The
State also introduced into evidence the child pornography found on Martin=s
computer.  Martin responded by
introducing evidence that his son-in-law worked as a computer consultant and
that, although highly unlikely, it was possible for someone to remotely hack
into a computer and download photographs onto it.  Martin=s
defensive theory was that the allegations against him had been contrived by his
daughter and her husband because of an argument over a house they were
purchasing from him.  To support this
theory, Martin introduced into evidence, by way of various persons=
testimony, that he owned the house that his daughter and her family lived in
and that he had had a falling out with her over selling the house.  The State responded by introducing into
evidence two prior occasions where Martin had been involved in misconduct with
a child.

After
examining all the evidence in a neutral light, we find that Martin=s
conclusion that the evidence is factually insufficient readily conflicts with
the standard of review for factual sufficiency. 
Martin argues the credibility of S.S.=s
testimony in isolation in order to arrive at his conclusion;  however, the factual sufficiency standard
requires that we view all the evidence in a neutral light.  See Watson, 204 S.W.3d at 414.  Therefore, after examining all of the
evidence in a neutral light, favoring neither party, we hold that the evidence
supporting Martin=s conviction for the March 5,
2006, aggravated sexual assault charge is not so weak that the jury=s
determination is clearly wrong or manifestly unjust.

2.  Convictions Arising From Photographs

Additionally,
Martin argues that the State failed to identify him as the man in the
photographs found on his computer; 
therefore, the evidence is factually insufficient to support the eight
convictions that arose as a result of the photographs.  To support his argument, Martin claims that
he did not take the pictures, that he did not commit any of the alleged
offenses, and that he was out of the country on the dates that the alleged
offenses occurred.  The jury, however,
received the following direct and circumstantial evidence.








Detective
Mike Weaver of the Arlington police department testified that a search of
Martin=s
computer turned up hundreds of child pornography photographs.  Martin testified that he did not know the
photographs were on his computer and that the computer was not password
protected.  Detective Weaver also
testified that he had identified the dates the photographs were taken and the
type of camera used to take them, a Sony Cybershot DSC-P32.  Martin responded that he was either in
Abilene or out of the country on the dates the photographs were taken.  However, the State introduced evidence that
Martin=s
passport revealed that he was unaccounted for during the times he claimed to be
out of the country.  The State also
entered into evidence a Sony Cybershot DSC-P32 camera retrieved by the police
from Martin=s home.  Martin responded that the camera belonged to
his wife; however, his wife testified that Martin was the primary user of the
camera.








Some of
the photographs discovered on Martin=s
computer showed the image of an adult male, whose face is unseen, performing
sexual acts with S.S.  In a few of the
photographs, the man=s shirt, hands, and sex organ
can be seen.  Martin=s
daughter and wife both testified that the man=s shirt
in the photograph looked like one owned by Martin.  Martin denied owning the shirt and the police
were unable to find the shirt at Martin=s
house.  However, Martin=s wife
testified that she might have packed the shirt in Martin=s bag
for his stay at the hospital. 
Furthermore, Martin=s
daughter testified that the hand shown in one of the photographs belonged to
Martin.[6]  Finally, Detective Weber testified that the
male=s sex
organ in the photograph was circumcised, that he photographed Martin=s sex
organ, and that Martin was circumcised. 
Martin testified that he had not been circumcised.  However, Martin=s wife
testified that Martin had told her that he had had a partial circumcision.








After
examining all the evidence in a neutral light, we cannot say that the evidence
in this case is so weak that the verdicts are clearly wrong and manifestly
unjust or that the conflicting evidence so greatly outweighs the evidence
supporting the verdict that the jury=s
determination is manifestly unjust.  See
Johnson, 23 S.W.3d at 9.  A decision
is not manifestly unjust merely because the jury resolved conflicting views of
the evidence in favor of the State.  Cain,
958 S.W.2d at 410.  Deferring, as we
must, to the jury=s resolution of contradictory
testimony and evaluation of credibility and demeanor, we conclude that the
evidence, when viewed in a neutral light, is factually sufficient to support
the jury=s
finding that Martin was the unidentified man in the photographs;  and therefore, the evidence is factually
sufficient to support the eight convictions that arose from the
photographs.  See Johnson, 23
S.W.3d at 9.

Having
found that the evidence is factually sufficient to support all nine of Martin=s
convictions, we overrule Martin=s second
issue.

                               V.  Competency of a Child Witness

In his
third and fourth issues, Martin contends that the trial court erred in allowing
six-year-old S.S. to testify.

A.  Standard of Review

A trial
court=s
determination of whether a child witness is competent to testify and its ruling
on the issue will not be disturbed on appeal absent an abuse of
discretion.  Broussard v. State,
910 S.W.2d 952, 960 (Tex. Crim. App. 1995), cert. denied, 519 U.S. 826
(1996).  We review the child=s
responses to qualification questions as well as the child=s entire
testimony to determine whether the trial court=s ruling
constituted an abuse of discretion.  De
Los Santos v. State, 219 S.W.3d 71, 80B81 (Tex.
App.CSan
Antonio 2006, no pet.).

B.  Applicable Law








Rule 601
of the Rules of Evidence, creates a presumption that a person is competent to
testify.  Tex. R. Evid. 601.  The trial court has no duty to conduct a
preliminary examination on its own motion. 
McGinn v. State, 961 S.W.2d 161, 165 (Tex. Crim. App. 1998).  Once the competency of a child witness is
challenged, the trial court must assure itself that the child has (1) the
ability to intelligently observe the events in question at the time of the
occurrence, (2) the capacity to recollect the events, and (3) the capacity to
narrate the events.  Torres v. State,
33 S.W.3d 252, 255 (Tex. Crim. App. 2000) (quoting Watson v. State, 596
S.W.2d 867, 870 (Tex. Crim. App. 1980)). 
Inconsistencies or conflicts in a child=s
testimony do not automatically render the child incompetent to testify but,
instead, affect the weight to be given to the child=s
testimony.  See Upton v. State,
894 S.W.2d 426, 429 (Tex. App.CAmarillo
1995, pet. ref=d).








However,
to preserve a complaint for our review, a party must have presented to the
trial court a timely request, objection, or motion that states the specific
grounds for the desired ruling if they are not apparent from the context of the
request, objection, or motion.  Tex. R.
App. P. 33.1(a)(1); Mosley v. State, 983 S.W.2d 249, 265 (Tex. Crim.
App. 1998) (op. on reh=g), cert. denied, 526
U.S. 1070 (1999).  An objection must be
made as soon as the basis for the objection becomes apparent.  Tex. R. Evid. 103(a)(1);  Lagrone v. State, 942 S.W.2d 602, 618
(Tex. Crim. App.), cert. denied, 522 U.S. 917 (1997); Polk v. State,
729 S.W.2d 749, 753 (Tex. Crim. App. 1987). 
Further, the trial court must have ruled on the request, objection, or
motion, either expressly or implicitly, or the complaining party must have
objected to the trial court=s
refusal to rule.  Tex. R. App. P.
33.1(a)(2); Mendez v. State, 138 S.W.3d 334, 341 (Tex. Crim. App. 2004).

C.  Analysis

Here,
Martin complains that the trial court erred in finding S.S. competent to testify
and further erred in having overruled his motion to strike S.S.=s
testimony.  However, Martin failed to
timely preserve his complaint.

In a
hearing held outside the presence of the jury, the trial court probed S.S.=s
ability to distinguish the truth from a lie by asking, A[I]f I
said, how do you like my white robe, would that be telling you the truth or
would I be telling you a lie?@  S.S. correctly answered that it was a
lie.  Also, when asked by the State, A[W]e
know that you=re not supposed to tell lies,
don=t we?@, S.S.
replied Ayes.@








After
asking her a series of questions, the trial court found S.S. competent to
testify.  During the court=s
questioning of S.S., Martin did not object, nor did he object when the trial
court made its finding of competency. 
Furthermore, Martin did not make any objections when S.S. testified in
the presence of the jury.  In fact,
Martin=s only
objection came after the witness had been passed and the jury had left for the
day.  That was too late.  See Tex. R. Evid. 103(a)(1); Lagrone,
942 S.W.2d at 618 (holding that the objection was untimely because
appellant did not object until the prosecutor=s
question had been asked and answered, and the prosecutor had passed the
witness); Polk, 729 S.W.2d at 753 (holding that for an objection to be
timely, it must be lodged Aat the
earliest opportunity,@ or Aas soon
as the ground for objection becomes apparent@).

Because
Martin failed to object at his earliest opportunity, he has preserved nothing
for appellate review on this point; therefore, we overrule Martin=s third
and fourth issues.

                                         VI.  Double Jeopardy

In his
fifth issue, Martin complains that his nine convictions constitute multiple
punishments for the same offense; 
therefore, his right to be free from double jeopardy was violated.

A.  Standard of Review

The
Double Jeopardy Clause of the United States Constitution provides that no
person shall be subjected to twice having life or limb in jeopardy for the same
offense.  U.S. Const. amend. V.  Generally, this clause protects against
multiple punishments for the same offense. 
Brown v. Ohio, 432 U.S. 161, 165, 97 S. Ct. 2221, 2225 (1977); Ex
parte Herron, 790 S.W.2d 623, 624 (Tex. Crim. App. 1990) (op. on reh=g).








To
determine whether offenses are the same, we must examine the elements of the
applicable statutes to determine whether each statute Arequires
proof of an additional fact which the other does not.@  Blockburger v. United States, 284 U.S.
299, 304, 52 S. Ct. 180, 182 (1932); see United States v. Dixon, 509
U.S. 688, 696, 113 S. Ct. 2849, 2856 (1993); Parrish v. State, 869
S.W.2d 352, 353B55 (Tex. Crim. App. 1994).  However, in multiple punishment cases, the
court of criminal appeals has recognized that Blockburger is not the
exclusive test and that theses cases require a two-step analysis.  The first step is to examine the proof
necessary to establish the statutory elements of each offense as alleged in the
indictment.  Vineyard v. State,
958 S.W.2d 834, 836 (Tex. Crim. App. 1998). 
The second step requires an analysis of the legislative intent, i.e.,
whether it was the legislature=s intent
to impose multiple punishments or only one. 
Ex parte Ervin, 991 S.W.2d 804, 814 (Tex. Crim. App. 1999).

B.  Applicable Law

A person
commits aggravated sexual assault of a child under the age of fourteen, if the
person intentionally or knowingly: (1) causes the penetration of the anus or
sexual organ of a child by any means or (2) causes the anus of a child to
contact the mouth, anus, or sexual organ of another person, including the
actor.  Tex. Penal Code Ann. '
21.02(a)(1)(B)(i),(iv) (Vernon Supp. 2008).








A person
commits the offense of indecency with a child younger the seventeen years, if
the person: (1) engages in sexual contact with the child or causes the child to
engage in sexual contact or (2) with intent to arouse or gratify the sexual
desire of any person (A) exposes the person=s anus
or any part of the person=s genitals, knowing the child is
present or (B) causes the child to expose the child=s anus
or any part of the child=s genitals.  Tex. Penal Code Ann. '
21.11(a)(1), (2) (Vernon 2003).  Sexual
contact means any touching of any part of the body of a child, including
touching through clothing, with the anus, breast, or any part of the genitals
of a person.  Id. at (c)(2).

Courts
have held indecency with a child to be a lesser included offense of aggravated
sexual assault in certain circumstancesCnamely,
when the State uses one act to prove both offenses.  See, e.g., Ochoa v. State, 982 S.W.2d
904, 908 (Tex. Crim. App. 1998);  Beltran
v. State, 30 S.W.3d 532, 534 (Tex. App.CSan
Antonio 2000, no pet.).  However, when
evidence supporting an indecency charge is not the same as that supporting the
prosecution for aggravated sexual assault, the former will not be deemed to be
a lesser included offense of the latter, and both may be prosecuted without
violating the double jeopardy clause.  See,
e.g., Bottenfield v. State, 77 S.W.3d 349, 358 (Tex. App.CFort
Worth 2002, pet. ref=d), cert. denied, 539
U.S. 916 (2003) (evidence showed appellant touched victim=s Awinkie@ twice,
thus supporting convictions for both aggravated sexual assault and indecency).

C.  Analysis








Martin
asserts that the trial court deprived him of his constitutional protections
against double jeopardy by allowing the State to prosecute and punish him twice
for the same offense.  Specifically,
Martin argues that the State did not conclusively establish when the
photographs found on his computer were taken and, as a result, Martin received
multiple punishments for the same offense. 
In the alternative, Martin argues that, if the dates were conclusively
established, then the two photographs taken on December 16, 2004, constitute
one offense; and therefore, the convictions he received for the December 16,
2004, photographsCindecency with a child and
aggravated sexual assaultCconstitute multiple
punishments.  We disagree.

The
following is a list of Martin=s
convictions arising from the photographs found on his computer:[7]

2-07-309-CR B 05/28/2005    Indecency with a Child (Fondling):

Photo of a child laying
between an

adult male=s legs reaching up behind

herself and grasping the
adult male=s

sex organ.

2-07-310-CR B 12/16/2004    Indecency with a Child (Fondling):

Photo of a child=s hands grasping the

end of an adult male=s sex organ.

2-07-311-CR B 05/28/2005    Aggravated Sexual Assault of a Child








(under 14): Photo of an adult male=s

sex organ touching the
vagina of a

young female.

2-07-312-CR B 04/18/2005    Aggravated Sexual Assault of a Child

(under 14): Photo of an adult male=s

sex organ touching the
vagina of a

young female.      

2-07-313-CR B12/16/2004     Aggravated Sexual Assault of a Child

(under age 14): Photo showing the

mouth of a child being
penetrated by

an adult male=s sex organ.

2-07-314-CR B12/16/2004     Sexual Performance by a Child:

Digital File of a young
female exB

posing her genitals.

2-07-315-CR B01/08/2005     Sexual Performance by a Child:

Digital File of a young
female

touching the outside of
her vaginal

area and spreading the
vaginal area

to some degree.

2-07-316-CR B12/11/2004     Sexual Performance by a Child:

Digital File of a young
female pulling

back her panties and
exposing her

vaginal
area.

At
trial, the jury heard testimony by Detective Mike Weaver, a certified forensic
computer examiner with the Arlington police department.  Detective Weaver testified extensively on the
methods he used to determine the dates that the photographs were taken.  On cross, Martin asked Detective Weaver
whether it was possible to manipulate the date and time on the image.  Detective Weaver=s reply
was, AIs it
possible, yes.  Unlikely, no.  It=s not
likely in this case in my opinion.@








Deferring,
as we must, to the jury=s resolution of contradictory
testimony and evaluation of credibility and demeanor, we conclude that the
evidence supports the jury=s
reliance on the dates established by Detective Weaver=s
testimony.  Consequently, because the
photographs, with a few exceptions, were taken on different dates, Martin=s
convictions do not violate the double jeopardy clause.  However, since there were multiple
punishments for photographs taken on December 16, 2004, we must address Martin=s
argument that the State punished him twice for the same act.








In
separate indictments, the State charged Martin with aggravated sexual assault
of a child under the age of fourteen and indecency with a child.  The charges stemmed from two photographs
found on Martin=s computer; both taken on
December 16, 2004.  The photographs
clearly show two separate and distinct acts; 
(1) contact between S.S.=s hands
and Martin=s sex organ and (2) contact
between S.S.=s mouth and Martin=s sex
organ.  See, e.g., Murray v. State,
24 S.W.3d 881, 889 (Tex. App.CWaco
2000, pet. ref=d) (holding that defendant may
be convicted of both indecency with a child and aggravated sexual assault when
evidence indicates that defendant penetrated victim=s female
sexual organ with his fingers and touched her genitals with his tongue).  Because the evidence supporting Martin=s
indecency charge is not the same as that supporting the evidence for his
aggravated sexual assault charge, the former will not be deemed to be a lesser
included offense of the latter, and both may be prosecuted without violating
the double jeopardy clause.  Accordingly,
we overrule Martin=s fifth issue.

                                      VII.  Extraneous Offenses

In his
sixth and final issue, Martin contends that the trial court abused its
discretion in admitting evidence of extraneous offenses.

A.  Standard of Review

A trial
court=s ruling
on the admissibility of evidence is reviewed under an abuse of discretion
standard.  Moses v. State, 105
S.W.3d 622, 627 (Tex. Crim. App. 2003). 
If the trial court=s ruling was within the zone of
reasonable disagreement, there is no abuse of discretion.  Id. 
Further, a trial court=s
decision regarding admissibility of evidence will be sustained if correct on
any theory of law applicable to the case, even when the court=s
underlying reason for the decision is wrong. 
Romero v. State, 800 S.W.2d 539, 543B44 (Tex.
Crim. App. 1990) (citing Spann v. State, 448 S.W.2d 128 (Tex. Crim. App.
1969)).

B.  Applicable Law








Pursuant
to rule 404(b), evidence of extraneous offenses is not admissible during the
guilt-innocence phase of a trial to prove a defendant acted in conformity with
his bad character.  Tex. R. Evid. 404(b).  However, extraneous offense evidence may be Aadmissible
for other purposes, such as proof of motive, opportunity, intent, preparation,
plan, knowledge, identity, or absence of mistake or accident@ when it
has relevance beyond character conformity. 
Id.; Moses, 105 S.W.3d at 626.

Rebuttal
of a defensive theory is also one of the permissible purposes for which
evidence may be admitted under rule 404(b). 
Moses, 105 S.W.3d at 626. 
The court of criminal appeals has held that extraneous offense evidence
is admissible under rule 404(b) to rebut a defensive theory raised in an
opening statement.  Ransom v. State,
920 S.W.2d 288, 301 (Tex. Crim. App. 1994) (op. on reh=g).  In sexual assault cases, extraneous offense
evidence may be admitted under rule 404(b) to rebut defensive theories of
retaliation or that the defendant is an innocent victim of a Aframe-up.@  Wheeler v. State, 67 S.W.3d 879, 887
n. 22 (Tex. Crim. App. 2002) (involving the defensive theory of conspiracy or
frame-up motivated by greed or money); Moses, 105 S.W.3d at 627
(involving a retaliation defensive theory); Dennis v. State, 178 S.W.3d
172, 178 (Tex. App.CHouston [1st Dist.] 2005, pet.
ref=d)
(involving frame-up defensive theory motivated by anger or revenge).








Even if
relevant evidence is offered and admissible under rule 404(b), a trial court
should nevertheless exclude it if its probative value is substantially
outweighed by the danger of unfair prejudice. 
Tex. R. Evid. 403; Moses, 105 S.W.3d at 626.  The trial court must conduct a rule 403
balancing test to make this determination. 
See Mozon v. State, 991 S.W.2d 841, 847 (Tex. Crim. App. 1999); Bargas
v. State, 252 S.W.3d 876, 890B91 (Tex.
App.CHouston
[14th Dist.] 2008, no pet. h.).  When
undertaking a rule 403 analysis, a trial court must balance (1) the inherent
probative force of the proffered item of evidence along with (2) the proponent=s need
for that evidence against (3) any tendency of the evidence to suggest decision
on an improper basis, (4) any tendency of the evidence to confuse or distract
the jury from the main issues, (5) any tendency of the evidence to be given
undue weight by a jury that has not been equipped to evaluate the probative
force of the evidence, and (6) the likelihood that presentation of the evidence
will consume an inordinate amount of time or merely repeat evidence already
admitted.  Gigliobianco v. State,
210 S.W.3d 637, 642 (Tex. Crim. App. 2006).

C.  Analysis








Martin
contends that the trial court abused its discretion by permitting the State to
question him regarding a statutory rape charge filed against him in 1983.[8]  He also argues that the trial court abused
its discretion by allowing the testimony of Amanda Rogers.[9]  Martin complains that the evidence was too
remote to be probative; or alternatively, that the probative value, if any, was
substantially outweighed by its prejudicial effect.  The State however, argues that it sought to
admit the evidence of the extraneous offenses to rebut Martin=s
defensive theory that his daughter and son-in-law had Aorchestrated
this event.@ 
In his opening statement, Martin stated:

Keep an open mind until
you=ve listened to all the
evidence in this case, because there=s a lot that hasn=t been said.  What you=re going to find out is that in 2001 [S.S.] and
her parents moved into the house that was owned by [Martin] . . .  They moved in and they decided that they
wanted that house.  Well, they were never
able to get the money together to buy the house.  What they did do, the house was damaged in
2002 by hail and rain . . . and there was substantial funds that were never
given to [Martin].  [The funds] were put
in [S.S.=s parents=] account and kept and
some of the repairs were paid for. . . . They never came through.

 

Subsequent to that
time[,] the two of them kept asking [Martin], AWhy don=t you just give us the
house? . . . And he said, ANo, we had a deal that you were going to buy the
house from me.@

 

And what has happened is
[S.S.=s father], who is a
computer expert, you=ll find worked on this
computer that [Martin] had bought in 2005 at his house okay?  These photos that are on this computer will
give you a string of dates of when supposedly the photos were taken and when
they were placed on the computer.  You=ll find out that all
those dates and times can be manipulated by an expert that knows how to
manipulate them.

 








It is
clear from his opening statement, that Martin raised a Aframe-up@
defensive theory.  Therefore, under Moses,
we hold that the trial court did not abuse its discretion in determining that
the statutory rape charge and Rogers=
testimony were relevant rebuttal evidence to show the jury that S.S.=s
parents were not motivated by greed or money in making the allegations against
Martin.  See Moses, 105
S.W.3d at 627.  However, as previously
noted, even if relevant evidence is offered and admissible under rule 404(b),
we must nevertheless exclude it if its probative value is substantially
outweighed by the danger of unfair prejudice. 
Tex. R. Evid. 403; Moses, 105 S.W.3d at 626.  Accordingly, we must conduct a 403 balancing
test to determine whether the probative value is outweighed by undue
prejudice.  See Mozon, 991 S.W.2d
at 847; Bargas, 252 S.W.3d at 891B92.

The
first of the three factorsCthe
strength of the evidence to make a fact of consequence more or less probableCweighs
strongly in favor of admissibility.  This
is so, primarily because the evidence of the statutory rape charge and the
testimony by Rogers were probative to rebut the defensive theory that S.S.=s
parents had framed Martin in order to get the house.  Therefore, the admission of this evidence
makes it less likely that S.S.=s
allegations concerning the charged offenses were the result of a frame-up.








As to
the second and third factors, although the evidence had the potential to
impress the jury in an indelible way, any unfair prejudice is outweighed by the
probative value of the evidence.  See
Bargas, 252 S.W.3d at 893B94.  Furthermore, the State did not elicit
detailed accounts of the offenses, but only asked a few questions in order to
show similarities to the charged offenses.

Finally,
other than the details and circumstances of the charged offenses, the State had
no other evidence to rebut Martin=s
defensive theory.  Therefore, the State
displayed a need for the evidence to counter Martin=s
defensive theory that S.S.=s
parents were trying to frame him.[10]

In
balancing the above factors, we find that the trial court=s
decision to admit the extraneous offense evidence was within the zone of
reasonable disagreement.  As such, we
hold that the trial court did not abuse its discretion under rule 403 in
admitting the extraneous offense evidence; 
and accordingly, we overrule Martin=s sixth
and final issue.








                                            VIII.  Conclusion

Having
overruled all six of Martin=s
issues, we affirm the trial court=s
judgment.

 

 

BOB MCCOY

JUSTICE

 

PANEL: LIVINGSTON, DAUPHINOT, and MCCOY, JJ.

 

DO NOT PUBLISH

Tex. R. App. P. 47.2(b)

 

DELIVERED: November 6, 2008











[1]See Tex. R. App. P. 47.4.





[2]The evidence showed that
S.S. was referring to her genitals when she said Abutt.@





[3]Martin claims that his
oral consent is invalid because he was under the influence of pain medication
at the time of his consent.





[4]At trial, Beverly
testified that the reason she did not use Martin=s computer without Martin
being there was because she was not very good with computers.





[5]When asked if the reason
she did not give consent right away was because the computer belonged to
Martin, Beverly replied, ANo.  Well, the reason I didn=t want to do that was
because of all of his research on the computer. 
Maybe I=ve watched too many
shows, but I didn=t want to mess up years
and years of research.@





[6]Martin=s daughter based her
identification of his hand on a scar and freckle shown in the photograph that
matched a scar and freckle on her father=s hand.





[7]Detective Weaver
testified that although some of the pictures did not show the face of S.S.,
other pictures taken around the same time and at the same location did.  The jury could have reasonably inferred that
the young female in the photographs was S.S. 
Furthermore, we have already held that there was sufficient evidence to
support the jury=s determination that
Martin is the male in the photographs.





[8]The statutory rape charge
was later dropped when Martin pleaded guilty to a lesser charge of contributing
to the delinquency of a minor.





[9]Rogers testified that in
1992, when she was around the age of nine or ten, Martin, while staying the
night at her parent=s house, had kissed her,
had inserted his finger into her vagina, and had touched her inappropriately on
other parts of her body.





[10]Martin elicited testimony
from L.S. to support his theory that L.S., as a computer expert, had the
ability to tamper with his computer.