ACCEPTED
01-14-00615-CR
FIRST COURT OF APPEALS
HOUSTON, TEXAS
4/20/2015 3:52:26 PM
CHRISTOPHER PRINE
CLERK

## No. 01-14-00615-CR

In the
Court of Appeals
For the
First District of Texas
At Houston

——————◆——————

## No. 1421977

In the 262nd District Court
Of Harris County, Texas

——————◆——————

### DEVON HENSLEY
*Appellant*

V.

### THE STATE OF TEXAS
*Appellee*

——————◆——————

## STATE'S APPELLATE BRIEF

——————◆——————

FILED IN
1st COURT OF APPEALS
HOUSTON, TEXAS

4/20/2015 3:52:26 PM

CHRISTOPHER A. PRINE
Clerk

**DEVON ANDERSON**
District Attorney
Harris County, Texas

**ABBIE MILES**
State Bar No: 24072240
Assistant District Attorney
Harris County, Texas

**JAMIE BURRO**
Assistant District Attorney
Harris County, Texas

1201 Franklin, Suite 600
Houston, Texas 77002
Tel.: 713/755-5826
FAX No.: 713/755-5809

ORAL ARGUMENT REQUESTED ONLY IF REQUESTED BY APPELLANT

## STATEMENT REGARDING ORAL ARGUMENT

Pursuant to TEX. R. APP. P. 9.4(g) and TEX. R. APP. P. 39.1, the State requests oral argument only if oral argument is requested by the appellant.

## IDENTIFICATION OF THE PARTIES

Pursuant to TEX. R. APP. P. 38.2(a)(1)(A), a complete list of the names of all interested parties is provided below.

Complainant, victim, or aggrieved party:

**Keanthony Wilson**

Counsel for the State:

**Devon Anderson** — District Attorney of Harris County

**Abbie Miles** — Assistant District Attorney on appeal

**Jamie Burro** — Assistant District Attorney at trial

Appellant or criminal defendant:

**Devon Hensley**

Counsel for Appellant:

**Wayne T. Hill** — Counsel on appeal

**Deborah Summers** — Counsel at trial

Trial Judge:

**Hon. Denise Bradley** — Presiding Judge

i

# TABLE OF CONTENTS

STATEMENT REGARDING ORAL ARGUMENT…………………….....………..i

IDENTIFICATION OF THE PARTIES………………………………......….i

INDEX OF AUTHORITIES………………………………….....……………..iii

STATEMENT OF THE CASE……………………………………….....…….1

STATEMENT OF THE FACTS…………………………………...……………..1

SUMMARY OF THE ARGUMENT…………………………….....………....5

REPLY TO APPELLANT'S FIRST ISSUE PRESENTED
The evidence is legally sufficient because appellate courts are not permitted to re-evaluate the credibility of witnesses because that is the sole province of the jury. Appellant's claim that the Keanthony and Clandre's testimony should now not be believed, turns the standard of review on its head. Further, the claim that the evidence is legally insufficient because of an alleged drug debt flies in the face of caselaw and the Texas Penal Code…………………………………………………….….6


REPLY TO APPELLANT'S SECOND ISSUE PRESENTED
Appellant failed to preserve his second point of error by no re-urging his pretrial motion when the evidence was offered during trial. Alternatively, denial of appellant's motion to testify free from impeachment was not an abuse of discretion because there was great probative value in the prior convictions to impeach appellant's testimony because his prior convictions were recent and involved deception. Further, there was very little prejudicial effect from the jury hearing that appellant had been convicted of possession of a controlled substance with intent to deliver since appellant's defense was that he did not commit an aggravated robbery, but rather was given the vehicle to pay a drug debt…………………………………………………………...…13

REPLY TO APPELLANT'S THIRDAND FOURTH ISSUE PRESENTED
The trial court did not error in admitting evidence of an extraneous aggravated robbery because appellant opened the door to the extraneous aggravated robbery by testifying that he sold the vehicle and had no knowledge of the items in the vehicle when he, in fact, used the vehicle in an aggravated robbery and the items found in the vehicle were taken in the aggravated robbery, the trial court did not abuse its discretion in admitting evidence of the aggravated robbery. ……………................….19

REPLY TO APPELLANT'S FIFTH ISSUE PRESENTED
The trial court committed no error in failing to sustain appellant's objection to the Prosecutor's argument that appellant made up nicknames for Keanthony and Clandre because it the argument was a reasonable inference from the evidence. …………….....................................................................................................…….29

CONCLUSION……………………………...……………….……………...31

CERTIFICATE OF SERVICE……………………….…………………….......32

# INDEX OF AUTHORITIES

## CASES

*Alvarado v. State*,
  912 S.W.2d 199, 207 (Tex. Crim. App. 1995) ...................................................7

*Armstrong v. State*,
  179 S.W.3d 84 (Tex. App.—Fort Worth 2005, no pet.) .........................................11

*Brooks v. State*,
  323 S.W.3d 893(Tex. Crim. App. 2010) ...................................................7

*Brown v. State*,
  270 S.W.3d 564 (Tex. Crim. App. 2008) ...................................................27

*Casey v. State*,
  215 S.W.3d 870 (Tex. Crim. App. 2007) ...................................................20

*Clayton v. State*,
  235 S.W.3d 772 (Tex. Crim. App. 2007) ...................................................8

*Collins v. State*,
  800 S.W.2d 267 (Tex. App.—Houston [14th Dist.] 1990, no pet.). .........................10

*Conner v. State*,
  67 S.W.3d 192 (Tex. Crim. App. 2001) ...................................................7

*Crawford v. State*,
  509 S.W.2d 582 (Tex. Crim. App. 1974). .................................................10

*Daggett v. State*,
  187 S.W.3d 444 (Tex. Crim. App. 2005) ...................................................25

*Davis v. State*,
  259 S.W.3d 778 (Tex. App.—Houston [1st Dist.] 2007, pet. ref'd) ........................17

*De La Paz v. State*,
  279 S.W.3d 336  (Tex. Crim. App. 2009) ...................................................20

*Devoe v. State*,
  354 S.W.3d 457 (Tex. Crim. App. 2011). ...................................................20

*Dewberry v. State*,
  4 S.W.3d 735 (Tex. Crim. App. 1999) ...................................................8, 9

*Drew v. State*,
  743 S.W.2d 207 (Tex. Crim. App. 1987) ..................................................29

*Etheridge v. State*,
  903 S.W.2d 1 (Tex. Crim. App. 1994) ........................................... 13, 18

*Ethington v. State*,
  819 S.W.2d 854 (Tex. Crim. App. 1991). ....................................... 13, 19

*Felder v. State*,
  848 S.W.2d 85 (Tex. Crim. App. 1992). ..............................................27

*Ford v. State*,
   305 S.W.3d 530 (Tex. Crim. App. 2009). ...................................... 12, 18

*Freeman v. State*,
  340 S.W.3d 717 (Tex. Crim. App. 2011), *cert. denied*, 132 S.Ct. 1099. ......................27

*Fuentes v. State*,
  991 S.W.2d 267 (Tex. Crim. App. 1999) ...............................................7

*Gaddis v. State*,
  753 S.W.2d 396 (Tex. Crim. App. 1988). ...........................................28

*Guidry v. State*,
  9 S.W.3d 133 (Tex. Crim. App. 1999). ...............................................27

*Hooper v. State*,
  214 S.W.3d 9 (Tex. Crim. App. 2007) ..................................................8

*Hudson v. State*,
  675 S.W.2d 507 (Tex. Crim. App. 1984). ...................................... 13, 18

*Jackson v. Virginia*,
  443 U.S 307 (1979) .............................................................................7

*Kincaid v. State*,
  534 S.W.2d 340 (Tex. Crim. App. 1976) ............................................26

*King v. State*,
  953 S.W.2d 266 (Tex. Crim. App. 1997). ...........................................30

*Layton v. State*,
  280 S.W.3d 235 (Tex. Crim. App. 2009). ...................................... 12, 18

*Lucas v. State*,
791 S.W.2d 35 (Tex. Crim. App. 1989) ..................................................................15

*Martinez v. State*,
327 S.W.3d 727 (Tex. Crim. App. 2010) ...............................................................20

*Matson v. State*,
819 S.W.2d 839 (Tex. Crim. App. 1991) .................................................................8

*Mendez v. State*,
138 S.W.3d 334 (Tex. Crim. App. 2004). ..................................................... 12, 18

*Mijores v. State*,
11 S.W.3d 253 (Tex. App.—Houston [14th Dist.] 1999, no pet.). .........................27

*Morris v. State*,
67 S.W.3d 257 (Tex. App.—Houston [1st Dist.] 2001, pet ref'd). .................... 14, 17

*Motilla v. State*,
78 S.W.3d 352 (Tex. Crim. App. 2002). .................................................................30

*Mowbray v. State*,
788 S.W.2d 658 (Tex. App.—Corpus Christi 1990, pet. ref'd). .............................29

*Pierce v. State*,
218 S.W.3d 211 (Tex. App.—Texarkana 2007, pet. ref'd) ............................ 10, 11

*Pomier v. State*,
326 S.W.3d 373 (Tex. App.—Houston [14th Dist.] 2010, no pet.) .........................7

*Powell v. State*,
194 S.W.3d 503 (Tex. Crim. App. 2006) ..........................................................8, 26

*Prescott v. State*,
744 S.W.2d 128 (Tex. Crim. App. 1988) ...............................................................25

*Ramirez v. State*,
802 S.W.2d 674 (Tex. Crim. App. 1990) ...............................................................25

*Rankin v. State*,
974 S.W.2d 707 (Tex. Crim. App. 1996) ...............................................................21

*Rodriguez v. State*,
129 S.W.3d 551 (Tex. App.—Houston [1st DIst.] 2003, pet. ref'd). ................. 15, 16

*Swearingen v. State,*
 101 S.W.3d 89 (Tex. Crim. App. 2003) ...............................................................8

*Theus v. State,*
 816 S.W.2d 773 (Tex. App.—Houston [14[th] Dist.] 1991 reversed by 845 S.W.2d 874
 overruled by 845 S.W.2d 874 (Tex. Crim. App. 1992)..........................................14

*Theus v. State,*
 845 S.W.2d 874 (Tex. Crim. App. 1992) ..................................... 14, 16, 17

*Villani v. State,*
 116 S.W.3d 297 (Tex. App.—Houston [14[th] Dist.] 2003, pet. ref'd.) ...................7, 8

*Wheeler v. State,*
 67 S.W.3d 879 (Tex. Crim. App. 2002) ...............................................................26

*Williams v. State,*
 301 S.W.3d 675 (Tex. Crim. App. 2009). ...........................................................20

*Wilson v. State,*
 71 S.W.3d 346 (Tex. Crim. App. 2002). ......................................... 12, 18

*Wyatt v. State,*
 23 S.W.3d 18 (Tex. Crim. App. 2000) .................................................................8

**STATUTES**

TEX. PENAL CODE § 29.02 (West 2011). ................................................................9

TEX. PENAL CODE § 29.03(a)(2) (West 2011)........................................................9

**RULES**

TEX. R. APP. P. 9.4(g) ........................................................................................ i

TEX. R. APP. P. 33.01(a)(1) (2) ......................................................... 12, 18

TEX. R. APP. PROC. 38.1(i). ..............................................................................13

TEX. R. APP. P. 38.2(a)(1)(A)............................................................................. i

TEX. R. APP. P. 39.1 ......................................................................................... i

TEX. R. APP. PROC. 44.2(a). ..............................................................................30

TEX. R. EVID. 404(b) ............................................................................20

TEX. R. EVID. 609(b). ............................................................................14

**TO THE HONORABLE COURT OF APPEALS:**

## STATEMENT OF THE CASE

Appellant was charged with aggravated robbery, and in one enhancement paragraph, was alleged to have been previously convicted of possession of a controlled substance (C.R. 6). Appellant entered a plea of not guilty to the offense, and a plea of true to the enhancement paragraph (R.R.III 11-12, R.R.IV 6; C.R. 95). The jury found appellant guilty, and sentenced him to confinement for 43 years in the Institutional Division of the Texas Department of Criminal Justice (R.R.III 123-124, R.R.V 4; C.R. 95). A written notice of appeal was timely filed (C.R. 98-100).

———————◆———————

## STATEMENT OF FACTS

The State challenges all factual assertions in appellant's brief and presents the following account of the facts.

Keanthony Wilson was still in high school on September 7, 2013, when he was hanging out with his friend Clandre Celestine at a carnival at Greenspoint Mall (R.R.III 15-16, 40). The carnival was closing, so the boys started walked back towards their car (R.R.III 17, 41). Appellant, Devon Hensley, approached the boys as they were walking to their car (R.R.III 19, 41). Appellant asked Keanthony the time, and as Keanthony was looking up from his phone, appellant "put the gun up to [his] hip" (R.R.III 19-20, 41). Appellant then demanded Keanthony's keys and wallet (R.R.III

20, 41-42). Neither boy had any money, so appellant ripped Keanthony's keys from his pants pocket, opened the car door and started the car, then got back out of the car (R.R.III 21, 28). Once appellant was out of the car he searched both boys for money, discovered they had none, then took their shoes, Clandre's jacket, and Keanthony's cell phone (R.R.III 21, 28, 41-43). Appellant then got into Keanthony's car, a blue PT Cruiser, and drove off with their possession (R.R.III 21, 43). The boys then ran to find police at the carnival (R.R.III 21-22, 34, 43). The boys were very scared (R.R.III 34). Keanthony gave police a description of appellant, and the license plate of the vehicle (R.R.III 22, 34-36). The police wrote a report, and then turned the case over to robbery detectives (R.R.III 35).

The vehicle was listed as stolen in a law enforcement database (R.R.III 36). A few days later a detective called and told Keanthony that his car had been found (R.R.III 22, 53-54). Appellant was driving the vehicle when it was located by Deputy Kenneth Taylor (R.R.III 54). Appellant was taken into custody once the vehicle was confirmed stolen (R.R.III 55). Appellant claimed that he did not know who owned the vehicle (R.R.III 55). Once appellant was arrested and taken to jail he told Deputy Taylor that he "[knew the police] got [him] on the robbery[,]…can [he] give [Deputy Taylor] information to get out of the robbery charge?" (R.R.III 56-57). Deputy Taylor told appellant to give the information to the Houston Police Department (R.R.III 57). Keanthony and Clandre subsequently identified appellant in a photo array (R.R.III 24-25, 44, 67, 69, 71).

At trial, appellant testified in his own defense. Appellant admitted to going to prison for possession of a controlled substance with intent to deliver and also having a prior theft conviction (R.R.III 75-76, 82). Appellant claimed to know Keanthony and Clandre (R.R.III 74-75). Appellant admitted to being a drug dealer who sold drugs to Clandre (R.R.III 76). Appellant claimed that Clandre owed him $700 (R.R.III 76). Appellant claimed the encounter at Greenspoint Mall was a planned meeting where appellant was supposed to collect on the drug debt that Clandre owed him (R.R.III 77). Appellant admitted that he did not think that Keanthony knew about the meeting (R.R.III 77). Appellant claimed that Clandre could not pay up on the debt so Clandre agreed to give him a the PT Cruiser to satisfy the debt (R.R.III 78). Appellant denied having or using a weapon (R.R.III 79). Appellant testified that after he got the car he sold it to James Ganther, a friend (R.R.III 79). James Ganther never testified to at trial to corroborate appellant' claim. Appellant stated he was renting the car from James to run an errand when he was arrested in the car a few days later (R.R.III 80). Appellant admitted making the statement to Deputy Taylor about being caught on the robbery charge, but claimed it was just because he was scared (R.R.III 80-81, 88-89).

In rebuttal, the State offered the testimony of William McLaughlin to give more details regarding the day appellant was arrested. On September 9, 2013, William McLaughlin had an early meeting in the Greenspoint area (R.R.III 92-93). He arrived early so he parked in the parking lot of Greenspoint Mall and sat in his car preparing for the meeting (R.R.III 93). He got out of the car to get his briefcase from the trunk

and a noticed a small blue car pull up behind him (R.R.III 94-95). Appellant, who was driving the blue car, asked William if he could "help [him] out?" (R.R.III 95). William gave directions as requested by appellant (R.R.III 95). William looked back at appellant and saw that appellant had a gun pointed at his head and demanded "everything [William] had" (R.R.III 96). William handed over his wallet and cell phone and then told appellant he could take whatever he wanted out of his vehicle (R.R.III 96). William said "please, don't shoot me. I have a family." (R.R.III 96). Appellant then took the computer bag, and headed back to his car, and when he did that William took the opportunity and jumped in his car, engaged appellant in a "three-second stare down" in his side mirror, and then took off (R.R.III 97).

Once William drove down the road a bit he flagged down a firetruck who took him the fire station where he used the phone to call police (R.R.III 98). When William arrived home few hours later, a robbery detective was on the phone, and said that he had a suspect and wanted to meet with William (R.R.III 99). William identified appellant in a photo array (R.R.III 102). William's credit cards, laptop computer, driver's license, and computer bag were found when appellant was arrested (R.R.III 102-104). The credit cards and driver's license were in appellant's right front pocket when he was arrested by Deputy Taylor (R.R.III 107). Appellant claimed that he found these items in the street on Ella Boulevard (R.R.III 107). The laptop was in Keanthony's PT cruiser that appellant was driving (R.R.III 107).

———————◆———————

4

## SUMMARY OF THE ARGUMENT

The evidence of appellant's guilt is legally sufficient because appellant courts are not permitted to re-evaluate the credibility of witnesses because that is the sole province of the jury. Appellant's claim that the Keanthony and Clandre's testimony should now not be believed, turns the standard of review on its head. Further, the claim that the evidence is legally insufficient because of an alleged drug debt flies in the face of caselaw and the Texas Penal Code.

Appellant failed to preserve error arising from the trial court's denial of his *Theus* motion because appellant elicited questions regarding his criminal history, and then failing to object when the State also elicited questions regarding appellant's criminal history. Additionally, appellant has failed to adequately brief this point of error by failing to cite to the record and cite to legal authority for the proposition that the trial court erred in overruling appellant's *Theus* motion. Alternatively, denial of appellant's motion to testify free from impeachment was not an abuse of discretion because there was great probative value in the prior convictions to impeach appellant's testimony because his prior convictions were recent and involved deception. Further, there was very little prejudicial effect from the jury hearing that appellant had been convicted of possession of a controlled substance with intent to deliver since appellant's defense was that he did not commit an aggravated robbery, but rather was given the vehicle to pay a drug debt.

5

The trial court did not error in admitting evidence of an extraneous aggravated robbery because appellant opened the door to the extraneous aggravated robbery by testifying that he sold the vehicle and had no knowledge of the items in the vehicle when he, in fact, used the vehicle in an aggravated robbery and the items found in the vehicle were taken in the aggravated robbery, the trial court did not abuse its discretion in admitting evidence of the aggravated robbery.

The trial court committed no error in failing to sustain appellant's objection to the Prosecutor's argument that appellant made up nicknames for Keanthony and Clandre because it the argument was a reasonable inference from the evidence.

———————◆———————

## REPLY TO FIRST POINT OF ERROR

Appellant argues that the evidence supporting the verdict is insufficient because Keanthony and Clandre should were not credible witnesses and no theft occurred because appellant was collecting on a debt. However, the evidence of appellant's guilt for aggravated robbery is legally sufficient because appellate courts are not permitted to re-evaluate the credibility of witnesses because that is the sole province of the jury. Appellant's claim that the Keanthony and Clandre's testimony should now not be believed, turns the standard of review on its head. Further, the claim that the evidence is legally insufficient because of an alleged drug debt flies in the face of caselaw and the Texas Penal Code. Appellant's point of error should be overruled.

6

**Standard of Review**

The Court of Criminal Appeals has held that legal sufficiency is the only standard a reviewing court should apply in evaluating whether the evidence proving each element of the charged offense has been proven beyond a reasonable doubt. *Brooks v. State*, 323 S.W.3d 893, 912 (Tex. Crim. App. 2010)(plurality op.); *Pomier v. State*, 326 S.W.3d 373, 378 (Tex. App.—Houston [14th Dist.] 2010, no pet.). Accordingly, this Court must apply a legal-sufficiency standard when addressing appellant's sufficiency arguments. *Brooks*, 323 S.W.3d at 912; *Pomier*, 326 S.W.3d at 378.

Under a legal sufficiency review, "the relevant question is whether, after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Jackson v. Virginia*, 443 U.S 307, 319 (1979); *Conner v. State*, 67 S.W.3d 192, 197 (Tex. Crim. App. 2001). This Court considers all the evidence and the reasonable inferences therefrom. *Conner*, 67 S.W.3d at 197; *Alvarado v. State*, 912 S.W.2d 199, 207 (Tex. Crim. App. 1995). The jury, as the trier-of-fact, "is the sole judge of the credibility of the witnesses and of the strength of the evidence." *Fuentes v. State*, 991 S.W.2d 267, 271 (Tex. Crim. App. 1999); *Villani v. State*, 116 S.W.3d 297, 301 (Tex. App.—Houston [14th Dist.] 2003, pet. ref'd.). This Court should not re-evaluate the weight and credibility of the evidence and thereby substitute its judgment for that of

7

the fact finder. *Dewberry v. State*, 4 S.W.3d 735, 740 (Tex. Crim. App. 1999); *Villani*, 116 S.W.3d at 301.

Reconciliation of conflicts in the evidence is within the exclusive province of the jury, and the jury may choose to believe some testimony and disbelieve other testimony. *Wyatt v. State*, 23 S.W.3d 18, 30 (Tex. Crim. App. 2000). There is a presumption that conflicted facts were resolved in favor of the prosecution. *Matson v. State*, 819 S.W.2d 839, 847 (Tex. Crim. App. 1991). Each fact need not point directly and independently to the guilt of appellant, as long as the combined and cumulative force of all the incriminating circumstances is sufficient to support the conviction. *Clayton v. State*, 235 S.W.3d 772, 778 (Tex. Crim. App. 2007); *Hooper v. State*, 214 S.W.3d 9, 13 (Tex. Crim. App. 2007). Circumstantial evidence is as probative as direct evidence in establishing the guilt of an actor, and circumstantial evidence alone can be sufficient to establish guilt. *Hooper*, 214 S.W.3d at 13. The question is not whether a rational jury could have entertained a reasonable doubt, but whether it necessarily would have done so. *Swearingen v. State*, 101 S.W.3d 89, 96 (Tex. Crim. App. 2003). The "cumulative force" of all circumstantial evidence can be sufficient for a jury to find the accused guilty beyond a reasonable doubt. *See Powell v. State*, 194 S.W.3d 503, 507 (Tex. Crim. App. 2006).

**Analysis**

A person commits robbery when "in the course of committing theft…and with intent to obtain or maintain control of the property, he…intentionally or knowingly

8

threatens or places another in fear of imminent bodily injury or death." TEX. PENAL CODE § 29.02 (West 2011). A person commits aggravated robbery when he "commits robbery…[and] uses or exhibits a deadly weapon…" TEX. PENAL CODE § 29.03(a)(2) (West 2011). In the present case, appellant was charged with, while "in the course of committing theft of property owned by Keanthony Wilson, and with the intent to obtain and maintain control of the property, intentionally and knowingly threaten and place Keanthony Wilson in fear of imminent bodily injury and death" and in doing so "[used and exhibited] a deadly weapon,…a firearm." (C.R. 6).

Appellant argues that the evidence is legally insufficient because the "proof offered by the State was insufficient to establish beyond a reasonable doubt that [a]ppellant was in the course of committing theft of property owned by Keanthony Wilson when he came into possession of Wilson's vehicle."[1] Appellant attacks the credibility of the Keanthony and Clandre and claims that no theft occurred because the entire incident was "the redemption of a drug debt owed to him by [Clandre]."[2] At trial, only appellant claimed that a drug debt existed, and that the transfer of the vehicle to appellant was an agreed upon transaction. Appellant's claim that his testimony should now, on appeal, be believed, and that Keanthony and Clandre's testimony be discredited turns the standard of review on its head. *See Dewberry*, 4 S.W.3d at 740.

---

[1] Appellant's brief at 14.
[2] Appellant's brief at 10-12.

9

Additionally, appellant is essentially arguing that his self-serving claim that Clandre owed drug money to him somehow vitiates the fact that he demanded and then took property from Keanthony and Clandre at gunpoint. To the contrary, many cases have consistently held that "[b]eing in the position of a creditor does not endow the creditor with the right to commit mayhem to collect a debt which is owed." *Pierce v. State*, 218 S.W.3d 211, 215 (Tex. App.—Texarkana 2007, pet. ref'd).

Appellant's argument that he was collecting a debt flies in the face of the holding in *Crawford* that a creditor who assaults a debtor to collect an alleged debt commits the offense of robbery, and "[t]o hold otherwise would be establishing a dangerous doctrine, since it would authorize the accused not only to decide his own injury or damage but to enforce the collection thereof by force and violence[, and that is] contrary to the policy of our form of government." *Crawford v. State*, 509 S.W.2d 582, 584 (Tex. Crim. App. 1974). Similarly in *Collins*, the defendant challenged the sufficiency of the evidence to sustain a conviction for aggravated robbery when the defendant shot his ex-girlfriend to collect on a $30 debt she allegedly owed him for car parts. *Collins v. State*, 800 S.W.2d 267, 267-268 (Tex. App.—Houston [14th Dist.] 1990, no pet.). The court stated that the shooting the alleged debtor was not a justification or defense recognized by the Texas Penal Code. *Id.* at 269. The court held that the use of force to collect on a debt was prohibited. *Id.*; *See also Pierce v. State*, 218 S.W.3d 211, 215 (Tex. App.—Texarkana 2007, pet. ref'd) (holding that the evidence that the defendant committed aggravated robbery was sufficient despite the fact that

10

the defendant and two other men went to the complainant's house to collect on a debt and the complainant gave the men money and a check to stop the assault); *See also Armstrong v. State*, 179 S.W.3d 84, 87-88 (Tex. App.—Fort Worth 2005, no pet.) (holding that a creditor who collects a debt by force can commit aggravated robbery).

The evidence of appellant's guilt for aggravated robbery is legally sufficient because appellant courts are not permitted to re-evaluate the credibility of witnesses because that is the sole province of the jury. Appellant's claim that the Keanthony and Clandre's testimony should now not be believed, turns the standard of review on its head. Further, the claim that the evidence is legally insufficient because of an alleged drug debt flies in the face of caselaw and the Texas Penal Code. Appellant's point of error should be overruled.

### **REPLY TO SECOND POINT OF ERROR**

Appellant argues that the trial court erred in denying his *Theus* motion to testify free from impeachment. However, appellant failed to preserve error to his second point of error by eliciting questions regarding his criminal history, and then failing to object when the State also elicited questions regarding appellant's criminal history. Additionally, appellant has failed to adequately brief this point of error by failing to cite to the record and cite to legal authority for the proposition that the trial court erred in overruling appellant's *Theus* motion.

11

Denial of appellant's motion to testify free from impeachment was not an abuse of discretion because there was great probative value in the prior convictions to impeach appellant's testimony because his prior convictions were recent and involved deception. Further, there was very little prejudicial effect from the jury hearing that appellant had been convicted of possession of a controlled substance with intent to deliver since appellant's defense was that he did not commit an aggravated robbery, but rather was given the vehicle to pay a drug debt.

**Preservation of Error**

To preserve error on appeal, a party must first have presented to the trial court a timely request, objection, or motion that states the specific grounds for the desired ruling if they are not apparent from the context of the request, objection, or motion. TEX. R. APP. P. 33.01(a)(1); *Layton v. State*, 280 S.W.3d 235, 238-39 (Tex. Crim. App. 2009). The error alleged on appeal must correspond to the objection made at trial. *Wilson v. State*, 71 S.W.3d 346, 349 (Tex. Crim. App. 2002). Further, the trial court must have ruled on the request, objection, or motion, or the complaining party must have objected to the trial court's refusal to rule. TEX. R. APP. P. 33.1(a)(2); *Mendez v. State*, 138 S.W.3d 334, 341 (Tex. Crim. App. 2004). A reviewing court should not address the merits of an issue that has not been preserved for appeal. *Ford v. State*, 305 S.W.3d 530, 532 (Tex. Crim. App. 2009).

Appellant filed a pre-trial *Theus* motion attempting to exclude any mention of appellant's criminal history (C.R. 65-66). Appellant's motion was overruled (R.R.III

60-61). Appellant failed to preserve error not only by failing to object when the State questioned appellant about his prior convictions, but also by trial counsel for appellant eliciting testimony from appellant regarding his criminal history (R.R.III 75-76, 82). Appellant's failure to object to appellant's criminal history when the testimony was elicited and eliciting it himself failed to preserve error for appellate review. *See Etheridge v. State*, 903 S.W.2d 1, 14 (Tex. Crim. App. 1994); *Hudson v. State*, 675 S.W.2d 507, 511 (Tex. Crim. App. 1984). Any alleged error in the admission of evidence is cured where the same evidence comes in elsewhere without objection. *Ethington v. State*, 819 S.W.2d 854, 858 (Tex. Crim. App. 1991).

Additionally, on appeal, appellant's only argument that the trial court erred in overruling his *Theus* motion is that "[a]ppellant also submits the court abused its discretion when it denied [a]ppellant's Motion to Testify Free of Impeachment and as a result, that he is entitled to a new trial."[3] Appellant does not cite to the record or any authority in support of his argument, and thus appellant's second point of error has been inadequately briefed. TEX. R. APP. PROC. 38.1(i). Appellant's point of error should be overruled.

**Standard of Review**

"The determination of the admissibility of evidence is within the sound discretion of the trial court and will not be disturbed on appeal absent a clear abuse of discretion." *Theus v. State*, 816 S.W.2d 773, 774 (Tex. App.—Houston [14th Dist.] 1991

reversed by 845 S.W.2d 874 overruled by 845 S.W.2d 874, 880-881 (Tex. Crim. App. 1992). A trial court abuses its discretion when its decision to admit a prior conviction lies outside the zone of reasonable disagreement. *Theus v. State*, 845 S.W.2d 874, 881 (Tex. Crim. App. 1992); *Morris v. State*, 67 S.W.3d 257, 262 (Tex. App.—Houston [1st Dist.] 2001, pet ref'd).

**Analysis**

Texas Rule of Evidence 609 provides that "[f]or the purpose of attacking the credibility of a witness, evidence that the witness has been convicted of a crime shall be admitted if elicited from the witness or established by public record but only if the crime was a felony or involved moral turpitude, regardless of the punishment, and the court determines that the probative value of admitting this evidence outweighs its prejudicial effect to a party." However, such evidence is not admissible if more than ten years has passed since the date of the conviction or the date of release from confinement, whichever is later, unless the court determines, in the interests of justice, that the probative value of the conviction supported by specific facts and circumstances substantially outweighs its prejudicial effect. TEX. R. EVID. 609(b).

In the present case, appellant filed a pre-trial "MOTION TO TESTIFY FREE FROM IMPEACHMENT" (C.R. 65-66). The trial court denied the motion (R.R.III 60-61). In denying the motion, the trial court stated that since appellant's 2010 conviction for possession of a controlled substance "[i]t appears that he has not

---

[3] Appellant's brief at 17.

conformed his behavior, and they are recent convictions." (R.R.III 61). The trial court then found that "the probative value in terms of credibility, obviously, is significant here [and] the probative value outweighs any prejudicial effect." (R.R.III 61). Appellant then testified that the conviction was for possession of a controlled substance with intent to deliver, and he was not released from prison until May 13, 2013, a mere four months prior to the offense date of the present case (R.R.III 75, C.R. 6).

The record does not indicate the conviction date for appellant's prior theft conviction. However, the trial court could have considered the possession of a controlled substance with intent to deliver to have removed the taint of any remoteness from the theft conviction. *See Lucas v. State*, 791 S.W.2d 35, 51 (Tex. Crim. App. 1989) (stating that "[evidence of the lack of reformation or subsequent felony and certain misdemeanor convictions may then cause the prior conviction to fall outside the general rule and not be subject to the objection of remoteness" and that "[the question is on of discretion for the trial court"); *See also Rodriguez v. State*, 129 S.W.3d 551, 559 (Tex. App.—Houston [1st DIst.] 2003, pet. ref'd).

Appellant argues that "the court abused its discretion when it denied [a]ppellant's Motion to Testify Free of Impeachment[,] and as a result, that he is entitled to a new trial."[4] In *Theus*, the Court of Criminal Appeals set out a non-exclusive list of factors trial courts should weigh in determining whether the

prejudicial effect of a prior conviction substantially outweighs its probative value. *Theus*, 845 S.W.2d at 880-81. Such factors include the impeachment value of the prior crime, the recentness of the conviction in relation to the offense date of the present case, the similarity of the prior conviction to the present offense, the importance of the witness's testimony, and the importance of the witness's credibility. The proponent of the admission of the prior conviction has the burden of showing that any prejudicial effect is not substantially outweighed by the probative value. *Id.* at 880.

In apply these factors to the present case it is apparent that the trial court did not abuse its discretion in finding that the probative value of appellant's prior convictions weighed heavily in favor of admission. It is important to note that violent offenses carry a more prejudicial effect, and neither of appellant's prior convictions were for violent offenses. *Id.* at 881. Rather, appellant's prior convictions were theft and possession of a controlled substance with intent to deliver (R.R.III 75-76). The theft conviction is indicative of deception. *Rodriguez*, 129 S.W.3d at 559. Additionally, appellant's defense was that he did not take the vehicle by force, but was given the vehicle as payment for a drug debt, thus the jury hearing that he had previously been convicted of possession of a controlled substance with intent to deliver had little to no prejudicial effect because it lent credibility to his defense.

Regarding the temporal element, appellant had only been out of prison for four months before committing this aggravated robbery (R.R.III75-75, C.R. 6). This clearly

---

[4] Appellant's brief at 17.

indicates a pattern of behavior of running afoul of the law, and thus favors admissibility. *See Davis v. State*, 259 S.W.3d 778, 783 (Tex. App.—Houston [1ˢᵗ Dist.] 2007, pet. ref'd); *Theus*, 845 S.W.2d at 881. The charged offense is dissimilar from his prior convictions, and thus also favors admissibility because it creates a decreased risk of prejudice. *Davis*, 259 S.W.3d at 783.

Additionally, regarding the importance of the witness's testimony and credibility, "when the case involves the testimony of only the defendant and the State's witnesses…the importance of the defendant's credibility and testimony escalates" and "so will the need to allow the State an opportunity to impeach the defendant's credibility." *Id.* at 784; *See also Theus*, 845 S.W.2d at 881.

All factors favor admission of appellant's prior theft and possession of a controlled substance with intent to deliver convictions. Based on the *Theus* factors, the facts and circumstances of the present case and the nature and recentness of appellant's prior convictions, there was great probative value to their admission and de minimis, if any, prejudicial effect. The trial court did not abuse its discretion in denying appellant's *Theus* motion. *Theus*, 845 S.W.2d at 881; *Morris*, 67 S.W.3d at 262. Appellant's point of error should be overruled.

## **REPLY TO THIRD AND FOURTH POINTS OF ERROR**

Appellant argues that the trial court abused its discretion in allowing testimony and photographic exhibits regarding an extraneous aggravated robbery committed by

17

appellant the day he was arrest. However, appellant opened the door to the extraneous aggravated robbery by testifying that he sold the vehicle and had no knowledge of the items in the vehicle when he, in fact, used the vehicle in an aggravated robbery and the items found in the vehicle were taken in the aggravated robbery, the trial court did not abuse its discretion in admitting evidence of the aggravated robbery.

**Preservation of Error**

To preserve error on appeal, a party must first have presented to the trial court a timely request, objection, or motion that states the specific grounds for the desired ruling if they are not apparent from the context of the request, objection, or motion. TEX. R. APP. P. 33.01(a)(1); *Layton*, 280 S.W.3d at 238-39. The error alleged on appeal must correspond to the objection made at trial. *Wilson*, 71 S.W.3d at 349. Further, the trial court must have ruled on the request, objection, or motion, or the complaining party must have objected to the trial court's refusal to rule. TEX. R. APP. P. 33.1(a)(2); *Mendez*, 138 S.W.3d at 341. A reviewing court should not address the merits of an issue that has not been preserved for appeal. *Ford*, 305 S.W.3d at 532.

Appellant failed to preserve error to the admission of the extraneous aggravated robbery by neither objecting to the trial court's finding that appellant opened the door to extraneous aggravated robbery, nor objecting to the testimony of William McLaughlin, the complainant in the extraneous aggravated robbery (R.R.III 91-92). *See Etheridge*, 903 S.W.2d at 14; *Hudson*, 675 S.W.2d at 511. Any alleged error in

18

the admission of evidence is cured where the same evidence comes in elsewhere without objection. *Ethington*, 819 S.W.2d at 858.

Appellant filed a pre-trial motion in limine seeking to exclude his prior convictions and extraneous offenses (C.R. 68-69). In additional to offering William's testimony, the State offered exhibits 7 through 13 (photographs of William's possessions taken in the aggravated robbery that occurred on the September 9th), and appellant stated "Your Honor, I have no objection to State's Exhibits No. 8, No. 9, No. 11, No. 12, and No. 13...I object to Exhibits No. 7 and 10 because they have extraneous information on them." (R.R.III 102-103). Exhibits 7 through 13 were offered during William's testimony, the complainant in the extraneous aggravated robbery, and thus all pertained to the extraneous aggravated robbery (R.R.III 102-103). State's exhibit 7 clearly shows William's name on three credit cards (R.R.VI 15). State's exhibits 8, 9, 11, 12, and 13 are photographs of his laptop computer stolen in the aggravated robbery (R.R.VI 16-17, 19-21). Exhibits 7 and 10 clearly have William's name on them, while testimony from William was necessary to connect William to the property depicted in State's exhibits 8, 9, 11, 12, and 13, however, all these exhibits depict items found in appellant's possession when he was arrested and items that William testified were taken in the aggravated robbery (R.R.III 102-104, 107). Since appellant failed to object to all the exhibits pertaining to the extraneous aggravated robbery, and failed to object to William's testimony, he waived any error arising from

admission of evidence of aggravated robbery generally, and State's exhibit 7 and 10 specifically. *Id.*

**Standard of Review**

When reviewing a trial court's decision on the admissibility of evidence the proper standard of review is abuse of discretion. *Martinez v. State*, 327 S.W.3d 727, 736 (Tex. Crim. App. 2010). An abuse of discretion only occurs when a decision "lies outside the zone of reasonable disagreement." *Id.*; *Casey v. State*, 215 S.W.3d 870, 879 (Tex. Crim. App. 2007). The trial court's decision is generally within this zone when the extraneous offense is relevant, and not for the purpose of showing criminal propensity, and the probative value is not substantially outweighed by prejudice, confusion, and is not misleading to the jury. *De La Paz v. State*, 279 S.W.3d 336, 344 (Tex. Crim. App. 2009). The trial court's decision does not constitute an abuse of discretion if the decision can be upheld on any theory of law. *Id.*

**Analysis**

Rule 404(b) of the Texas Rules of Evidence prohibits admission of extraneous offenses to prove conformity or propensity to commit bad acts, but allows admission to show "motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake." TEX. R. EVID. 404(b*) Devoe v. State*, 354 S.W.3d 457, 469 (Tex. Crim. App. 2011). Rebutting a defense theory is also a proper reason to admit evidence of an extraneous act. *Williams v. State*, 301 S.W.3d 675, 687 (Tex. Crim. App. 2009). Exclusion of evidence under Rule 404(b) is only proper when there is no other

reason for exposing the jury to this evidence other than to show the accused's bad character. *Rankin v. State*, 974 S.W.2d 707, 709 (Tex. Crim. App. 1996).

Appellant argues that "the introduction of an extraneous offense allegedly occurring in the same geographic area as the allegation on trial, was nothing more than an effort to establish [a]ppellant's [criminal] character in order to show that he acted in conformity therewith."[5] Appellant further complains that "[t]he appellate record fails to establish that the trial court conducted a balancing test as required by **Montgomery and Rule 403 if the Texas Rules of Evidence**."[6] Appellant complains about the introduction of the extraneous aggravated robbery in his third point of error and then complains specifically State's exhibits 7 and 10 in his fourth point of error.[7]

In the present case, claimed that he knew Keanthony and Clandre because he lived in the same neighborhood as Keanthony and sold drugs to Clandre (R.R.III 75-76). Appellant claimed that the aggravated robbery was not a robbery at all, but was instead, an arranged meeting where Keanthony and Clandre had agreed to pay Clandre's drug debt to appellant with a vehicle (R.R.III 76-79). Appellant then claimed after getting the vehicle, he sold it to a man named James Ganther (R.R.III 79-80). Then, three days later when he was arrested, appellant claimed that he just happened to be borrowing the car from James to run errands (R.R.III 80). Appellant then stated

---

[5] Appellant's brief at 20.
[6] Appellant's brief at 20.

21

that he only made the comment to police that "they got [him] for this robbery" because he was "nervous" and assumed that Keanthony and Clandre reported the vehicle stolen because when they gave it to him becuase they did not give appellant the title (R.R.III 79-80). On cross examination, appellant detailed how he sold the vehicle to James Ganther on September 8th, the day before appellant was arrested, for $500 (R.R.III 86). On September 9th, appellant claimed that he picked up the vehicle a mere ten minutes before he was arrested in it (R.R.III 86-87). On direct examination, appellant claimed that he sold the car to a friend, and then three days later when appellant was arrested in the car, he had just borrowed the vehicle from that same friend to run errands (R.R.III 79-80). Regarding the day of appellant's arrest the following dialogue occurred:

Q. So, you were picked up right after you borrowed that car?

A. Yes, ma'am.

Q. So, anything that happened earlier that day was not you?

A. No, ma'am.

Q. And were there some things in the car that you didn't know how they got there?

A. Yes, ma'am. It had some things in the car, but it wasn't my car. It wasn't in my possession. I didn't worry about it.

Q. So, you don't know why those things were in the car?

A. No, ma'am.

---

[7] Appellant's brief at 17-21.

Q. Officer goes up and talks to you, right? He had his dog with him in the car, didn't he?

A. Yes, ma'am.

Q. Did he ask you where you got the car?

A. Yes, ma'am.

Q. And you told him you got it from a friend at Morgan Bay Apartments, right?

A. Yes, ma'am.

Q. And that was the James Ganther that you had just gotten the car from, right?

A. Yes, ma'am.

Q. Is that fairly close to the gas station where you were pulled over?

A. Yes, ma'am. Like about one mile, miles and a half away.

Q. You hadn't gone to Greenspoint Mall earlier that day?

A. No, ma'am.

Q. And after you got arrested—first of all, were you surprised when they had told you the car was reported stolen?

A. No, ma'am.

Q. Even though, according to your testimony, they had freely given you the car?

A. Yes, ma'am.

Q. And you told the officer, "I know you've got me for this robbery," right?

A. Yes, ma'am.

Q. So, you knew that we had the evidence on you for this aggravated robbery?

A. He had- - I didn't know that he had me for aggravated robbery, but he told me that the car token (sic) in an aggravated robbery.

Q. So, if you didn't know that he had you for an aggravated robbery, you still decided to tell him, I know you got me for this robbery?

A. Because he told me the car was tooken (sic) in an aggravated robbery.

Q. And you said, I know you've got me for this robbery, but can I give you some information – can I give you some more, I'm sorry, let me pull up the right quote. You say, "Can I give you some information to get out of this robbery charge," right?

A. Yes, ma'am.

Q. So, you told him I know you've got me for this robbery, right?

A. Yes, ma'am.

Q. Just to be clear, you picked up that car just minutes earlier?

A. Yes, ma'am.

Q. You weren't driving it earlier that day?

A. No, ma'am.

Q. And you weren't at Greenspoint Mall earlier that day?

A. No, ma'am.

(R.R.III 87-90).

After this testimony, the trial court found that appellant opened the door to the extraneous aggravated robbery (R.R.III 91). If a defendant testifies to a general statement of good conduct during a relevant period of time, he may open the door by

24

leaving a false impression with the jury about a relevant act or character trait. *Daggett v. State*, 187 S.W.3d 444, 453 (Tex. Crim. App. 2005) (*quoting United States v. Antonakeus*, 255 F.3d 714, 724-25 (9th Cir. 2001). "Evidence of an extraneous act that tends to rebut such testimony may be admissible to impeach the defendant." *Id.* at 452; *See also Ramirez v. State*, 802 S.W.2d 674, 676 (Tex. Crim. App. 1990) (when a witness leaves a false impression concerning matters relating to his or her credibility, the opposing party is allowed to correct the false impression); *Prescott v. State*, 744 S.W.2d 128, 131 (Tex. Crim. App. 1988) (defendant who a creates false impression during direct examination is commonly said to have "opened the door" to inquiry by the State as to the validity of his testimony).

In the present case, appellant opened the door to the extraneous aggravated robbery by claiming that he sold the car the day after he acquired it, just borrowed the car minutes before he was arrested by police, and that the items found in the vehicle were not his and he had no knowledge of where those items came from (R.R.III 75, 79-80, 87-90). This left a false impression with the jury because appellant had actually used the car a few hours earlier that day to commit another aggravated robbery in which the complainant identified appellant as the man who demanded his possession at gun point, and the items found in the vehicle were items taken in that aggravated robbery (R.R.III 94-97, 102). Additionally, appellant disavowed knowledge of the items in the vehicle claiming that he did not know anything about them because they

25

were in a vehicle that did not belong to him, when the reality was that some of those items were actually found in appellant's pocket (R.R.III 87-90, 107).

Since appellant chose to testify and introduce his version of events to the jury, the State was entitled to reply in kind. *Wheeler v. State*, 67 S.W.3d 879, 855 (Tex. Crim. App. 2002); *Kincaid v. State*, 534 S.W.2d 340, 342 (Tex. Crim. App. 1976) (generally, a party who introduces a version of events to the jury, invites the other side to respond to that evidence). Since appellant opened the door to the extraneous aggravated robbery by testifying that he sold the vehicle and had no knowledge of the items in the vehicle when he, in fact, used the vehicle in an aggravated robbery and the items found in the vehicle were taken in the aggravated robbery, the trial court did not abuse its discretion in admitting evidence of the aggravated robbery.

## REPLY TO FIFTH POINT OF ERROR

Appellant argues that the trial court erred when it failed to sustain appellant's objection to the Prosecutor's argument that appellant made up nicknames for Keanthony and Clandre. However, appellant admitted to making up a nickname for Clandre, and thus it was a reasonable inference from the evidence that he made up a nickname for Keanthony as well.

**Standard of Review**

The standard of review for improper jury argument is abuse of discretion. *Powell v. State*, 63 S.W.3d 435, 438 (Tex. Crim. App. 2001). "It is the duty of trial

26

counsel to confine their arguments to the record; reference to facts that are neither in evidence nor inferable from the evidence is therefore improper." *Brown v. State*, 270 S.W.3d 564, 570 (Tex. Crim. App. 2008) (*quoting Alejandro v. State*, 493 S.W.2d 230, 231 (Tex. Crim. App. 1973). "Thus, proper jury argument generally falls within one of four general areas: (1) summation of the evidence; (2) reasonable deduction from the evidence; (3) answer to argument of opposing counsel; and (4) plea for law enforcement." *Id.* (*citing Aleja*ndro, 493 S.W.2d at 231; *Guidry v. State*, 9 S.W.3d 133, 154 (Tex. Crim. App. 1999). "A prosecutor may not use closing arguments to present evidence that is outside the record." *Freeman v. State*, 340 S.W.3d 717, 728 (Tex. Crim. App. 2011), *cert. denied*, 132 S.Ct. 1099. "Improper references to facts that are neither in evidence nor inferable from the evidence are generally designed to arouse the passion and prejudice of the jury, and as such, are inappropriate." *Id.* (citing *Borjan v. State*, 787 S.W.2d 53, 57 (Tex. Crim. App. 1990)).

**Analysis**

The four permissible areas of jury argument are the summation of the evidence, reasonable deduction from the evidence, responding to the argument of opposing counsel, and plea for law enforcement. *Mijores v. State*, 11 S.W.3d 253, 257 (Tex. App.—Houston [14th Dist.] 1999, no pet.). An argument outside of these four areas is erroneous. *Felder v. State*, 848 S.W.2d 85, 94-95 (Tex. Crim. App. 1992). However, wide latitude is given to counsels when making inferences from the evidence, so long

as they are reasonable and in good faith. *Gaddis v. State*, 753 S.W.2d 396, 398 (Tex. Crim. App. 1988).

In closing arguments, the prosecutor stated, regarding reasons appellant's testimony should not be believed, "[t]here's been no evidence that [Keanthony and Clandre] ever used drugs in their life. And he makes up nicknames for them, CC and K. No one calls those kids that" (R.R.III 119). Appellant objected that this argument was "outside the evidence" (R.R.III 119). The trial court overruled the objection (R.R.III 119). Appellant argues that the prosecutor's argument "crossed the line and injected her own belief as to what the evidence was or was not."[8]

During appellant's testimony, he stated that he refers to Clandre as "CC" (R.R.III 81). Then, the following dialogue occurred:

Q. Does anybody else call him CC?

A. I don't know.

Q. Okay. If you heard that his friends call him Clay, would that surprise you?

A. Well, nah, not really.

Q. But you made up your own nickname for him, CC?

A. Yes, ma'am.

Q. Rather than going with his commonly used Clay?

A. Well, his street name is CC.

(R.R.III 81-82).

28

Additionally, during appellant's direct examination, appellant stated:

A. I don't think he did because I know it just delt with Mr. K like that, but I used to deal with CC on a regular basis.

Q. And so you know him as k?

A. Yes, ma'am.

Q. For Keanthony?

A. Yes, ma'am.

(R.R.III 77).

Appellant admitted that he made up his nickname for Clandre (R.R.III 82). Thus, it was a reasonable inference from the evidence that appellant make up a nickname for Keanthony as well. The State is permitted wide latitude in drawing inferences from the evidence as long as the inference is fair, legitimate, and offered in good faith. *See Drew v. State*, 743 S.W.2d 207, 218 (Tex. Crim. App. 1987); *Mowbray v. State*, 788 S.W.2d 658, 659, 671 (Tex. App.—Corpus Christi 1990, pet. ref'd). Since appellant admitted to making up is own nickname for Clandre, it was a reasonable inference from the evidence that he also made a nickname for Keanthony considering appellant admitted to barely knowing Keanthony (R.R.III 75).

---

[8] Appellant's brief at 23.

**Harm**

If this Court determines that the trial court erred in failing to immediately give a limiting instruction, reversal is only required a substantial right has been affected. *See* TEX. R. APP. PROC. 44.2(a). A substantial right is affected when the error had a substantial and injurious effect or influence ion the jury's verdict. *King v. State*, 953 S.W.2d 266, 271 (Tex. Crim. App. 1997). Substantial rights are not affected by the erroneous admission of evidence if, after examining the record as a whole, we have a fair assurance that the error did not influence the jury, or had but a slight effect. *Motilla v. State*, 78 S.W.3d 352, 355 (Tex. Crim. App. 2002).

If this Court finds that the Prosecutor's argument was erroneous, it was not reversal error given the overwhelming evidence of guilt and many inconsistencies in appellant's testimony. Appellant's point of error should be overruled.

———————————◆———————————

## CONCLUSION

It is respectfully submitted that all things are regular and that the conviction should be affirmed.

**DEVON ANDERSON**
District Attorney
Harris County, Texas


/s/ Abbie Miles
**ABBIE MILES**
Assistant District Attorney
Harris County, Texas
1201 Franklin, Suite 600
Houston, Texas  77002
(713) 755-5826
TBC No. 24072240
Miles_abbie@dao.hctx.net
Curry_Alan@daohctx.net

## CERTIFICATE OF COMPLIANCE

The undersigned attorney certifies that this computer-generated document has a word count of 8,030 words, based upon the representation provided by the word processing program that was used to create the document.

/s/ Abbie Miles

**Abbie Miles**
Assistant District Attorney

31

## CERTIFICATE OF SERVICE

This is to certify that a copy of the foregoing instrument has been mailed to the

appellant's attorney at the following address on April 20, 2015:


Wayne T. Hill
4615 Southwest Freeway, Ste. 600
Houston, Texas  77027


/s/ Abbie Miles
**ABBIE MILES**
Assistant District Attorney
Harris County, Texas
1201 Franklin, Suite 600
Houston, Texas  77002
(713) 755-5826
TBC No. 024072240
Miles_abbie@dao.hctx.net
Curry_Alan@dao.hctx.net


Date:  April 20, 2015